KENNEDY *v.* GIBSON AND OTHERS.

1. The 50th section of the National Bank Act of June 3d, 1864 (13 Stat. at Large, 116), which provides that suits under it, in which officers or agents of the United States are parties, shall be conducted by the district attorney of the district, is in so far but directory, that it cannot be set up by stockholders to defeat a suit brought against them by a receiver, under the act, which receiver, with the approval of the Treasury Department, and after the matter had been submitted to the Solicitor of the Treasury, had employed private counsel, by whom alone suit was conducted.

2. Upon a bill filed under the 50th section of that act, by a receiver, against the stockholders, where the bank fails to pay its notes, it is indispensable, that action on the part of the comptroller of the currency, touching the personal liability of the stockholders, *precede* the institution of any suit by the receiver, and the fact must be averred in the bill.

3. It is no objection to such a bill properly filed against stockholders within the jurisdiction of the court, that stockholders named in the bill, and averred in it to be without the jurisdiction, are not made co-defendants.

4. Creditors of the bank are not proper parties to such a bill. The receiver is the proper party to bring suit, whether at law or in equity.

5. Suits may be brought under the 57th section of the act, *by* any association, as well as *against* it; though the word "by" be omitted in the text of the section. Reading the section by the light of another section of a prior act, on the same general subject, the omission is to be regarded as an accidental one.

APPEAL from the Circuit Court for the District of Maryland; the case being thus:

The act of June 3d, 1864,* "to provide a National currency, &c.," and which establishes those associations for carrying on the business of banking, now known as our "National Banks," provides, by its 12th section, that the shareholders

"Shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of their stock therein, at the par value thereof, in addition to the amount invested in such shares, except, &c."

---

* 13 Stat. at Large, 99.

Subsequent sections provide for the comptroller of the currency making examination into the truth of an allegation, that a banking association has made default in paying its circulating notes, and authorize him, upon being satisfied that the association has refused, and is in default, to sell its securities pledged to the United States, and to pay the notes from the proceeds.

The 50th section enacts:

" That on becoming satisfied, as specified in the act, that any association has refused to pay its circulating notes, and is in default, the *comptroller of the currency* may, forthwith, appoint a receiver, who, *under direction of the comptroller*, shall take possession of the books, records, and assets of every description of the association, collect all debts, dues, and claims belonging to such association, and upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on like order, sell the real and personal property of such association, on such terms as the court may direct, and may, if necessary to pay the debts of such association, enforce the individual liability provided for by the 12th section of this act, and such receiver shall pay over all money so made to the treasurer of the United States, subject to the order of the comptroller of the currency, and also make report to the comptroller of all his proceedings."

The same section proceeds:

" The comptroller shall, thereupon, cause notice to be given by advertisement, in such newspapers as he may direct, for three consecutive months, calling on all persons who may have claims against such association, to present the same, and to make legal proof thereof. And, from time to time, the comptroller, after full provisions shall have been first made for refunding to the United States any such deficiency, in redeeming the notes of such association, as is mentioned in this act, shall make a ratable dividend of the money so paid over to him by such receiver, on all such claims as may have been proved to his satisfaction, or adjudicated in a court of competent jurisdiction; and from time to time, as the proceeds of the assets of such association shall be paid over to him, he shall make further dividends as aforesaid, on all claims previously proved or adjudicated; and

the remainder of such proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held."

The 56th and 57th sections enact:

" That all suits and proceedings, arising out of the provisions of this act, in which the United States, or its officers or agents, shall be parties, shall be conducted *by the district attorneys of the several districts, under the direction and supervision of the solicitor of the treasury.*

" That suits, actions, and proceedings AGAINST any association under this act, may be had in any Circuit, District, or Territorial court of the United States, held within the district in which such association may be established; or in any State, county, or municipal court, in the county or city in which said association is located, having jurisdiction in similar cases."

The 59th section of a previous act of February 25th, 1863, on the same general subject, had provided, that

" All suits, actions, and proceedings BY or AGAINST any association, under the act, may be had in any Circuit, District, or Territorial court of the United States, held within the district where such association was established."

With these different enactments upon the statute-book, Kennedy, of New York, filed a bill in the Circuit Court for Maryland, against Gibson, Barry, and several other persons, all citizens of Maryland, setting forth: That he, Kennedy, was receiver of the Merchants' National Bank of Washington (having a capital of $200,000), duly appointed and qualified under the already-quoted act of Congress of 1864; that the bank had failed to redeem its circulating notes; that the comptroller of the currency thereupon appointed him the said receiver, who then took possession of the books, papers, and assets of said bank, and was, at the time of filing the bill, engaged in collecting the debts due the bank, and in discharging the other duties devolved on him by law. The bill then stated that the *receiver* had already ascertained that the assets and credits of the said bank were wholly in

sufficient to pay its debts and liabilities, and that it would be necessary, to the complete and entire administration of his trust, that recourse should be had to the personal liability imposed on the stockholders by the already-mentioned acts of 1863 and 1864.

The bill further stated that 2000 shares of stock were duly issued by said bank, and the complainant averred *his* belief, and on it charged, that it would be necessary for the payment of the liabilities of this bank, to obtain, from its stockholders, an amount of money equal to the full amount of the stock so issued, according to its par value, that is, $200,000. He therefore insisted that *he* was entitled to have an account taken, as against the said stockholders, of the liabilities and available assets and credits of said bank, and to recover from each of them, individually, a proportionate contribution, for the purpose of making good any deficiency which might remain, after applying all the said assets and credits to the discharge of its liabilities; which deficiency, he charged, would largely exceed the said sum of $200,000, the par value of the whole capital stock.

The bill, after charging that at the failure of the bank, certain defendants, named in an exhibit to the bill, were shareholders of its stock to the amount stated in the exhibit, but, that *other stockholders named in the exhibit, were citizens, some of New York, and some of the District of Columbia,* and could not be made parties, because, being out of the jurisdiction of the court, their being joined as defendants would oust the jurisdiction of the court, and it prayed that the cause might proceed without making them parties.

Then followed a prayer for an account, and for a decree, directing each of the defendants to pay their pro rata of such balance of debt of the bank as might remain, after the application of its assets, and for further relief.

The bill, it will be observed by the reader, while sufficiently setting forth the facts necessary to warrant the appointment of a receiver, contained no averment of any action by the *comptroller*, touching the personal liability of the stockholders.

In addition, was the independent fact, that the suit had not been conducted by the district attorney for Maryland, as the already quoted 56th section of the act of 1864 directs that suits like it should be; nor was the bill even signed by him. But with the approval of the Treasury Department, after the matter had been submitted to the solicitor, and "under particular circumstances-in the case," Messrs. Brent and Merrick, private counsel, had been employed, and by one or both of these gentlemen, the suit had been brought and conducted.

The defendants demurred; and the demurrer being sustained and the case coming here, the following questions arose:

1. Whether the provision in the 56th section of the act of 1864, about suits being conducted by district attorneys of the United States, was of essential obligation in all cases, or whether it was directory rather.

2. Whether the omission of the bill, to aver action by the *comptroller*, touching the personal liability of the stockholders, precedently to suit being brought by the receiver, was fatal to the bill? This being the principal question in the case, and the affirmative resolution of which by the court below was apparently the chief ground on which the demurrer there was sustained.

3. Whether the stockholders, named in the bill, and therein alleged to be non-residents of the State of Maryland, were necessary parties to any suit brought against the other stockholders, touching the matters of equity charged in the bill?

4. Whether the alleged creditors of the bank were necessary parties to any suit brought against the stockholders, touching those matters last mentioned?

5. Whether, in view of the omission in the 57th section of the act of 1864 (literally read), of the word "BY," the bill could be sustained in the court where brought?

*Messrs. Brent and Merrick, for the appellant; Mr. Steele, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

This is an appeal in equity, from the decree of the Circuit Court of the United States for the District of Maryland. The bill was filed by the appellant. For the purposes of the points necessary to be considered, the case may be briefly stated. The appellant has been duly appointed receiver of the Merchants' Bank of Washington City, under the 50th section of the act of June 3d, 1864, and brings this bill to charge the defendants, who are alleged to be stockholders of the bank, with the personal liability prescribed by the 12th section of the act. The facts necessary to warrant the appointment of a receiver are sufficiently set forth. It is averred, that he " has already ascertained that the assets and credits of the association are wholly insufficient to pay its debts and liabilities, and that it will be necessary to the complete and entire administration of the trust reposed in him, that recourse shall be had to the personal liability imposed upon the stockholders;" that two thousand shares of the capital stock, amounting to $200,000, were issued by the bank to its stockholders; that it will be necessary to collect from them this amount, to make good the deficiency in the means to meet the balance of the indebtedness of the bank, which will remain after the application of all the available assets, to the discharge of its liabilities, and, that " after such application is made, a balance of indebtedness will remain due, largely exceeding the said sum of $200,000." The stockholders, besides the defendants, are named, and it is alleged that a part of them reside in the District of Columbia, and one of them in the State of New York. The prayer of the bill is, that an account may be taken, and that each of the defendants shall be decreed to pay to the receiver his *pro rata* share of the indebtedness of the bank, which may remain, after applying to the liabilities all its effects, as required by the act before mentioned, and for general relief. The bill is signed by the special counsel of the receiver. The name of the attorney of the United States does not appear in the case. The defendants demurred. Our opinion will cover all the points brought to our attention by

their counsel in the argument, without particularly stating them.

The receiver is the agent of the United States, and according to the 56th section of the act,* this suit should have been conducted by their attorney. But this provision is merely directory. The question which arises is between the United States and its officers. The rights of the defendants are in no wise concerned, and they cannot be heard to make the objection, that this duty of the local law officer of the government has been devolved upon another. It is to be presumed there were sufficient reasons to warrant this departure from the letter of the law.

The 50th section of the act provides, that the receiver, under the direction of the comptroller of the currency, shall take possession of the books and assets of every description of the association, collect all the debts and claims belonging to it, and may—proceeding in the manner prescribed—sell, or compound bad and doubtful debts, and sell all its real and personal property; " and may, *if necessary to pay the debts* of such association, enforce the individual liability of the stockholders." He is required to pay all the moneys he may realize, to the Treasurer of the United States, subject to the order of the comptroller, and to report to the comptroller all his proceedings. The comptroller is required to give notice to all persons having claims against the association to present and prove them; and after making provision for refunding to the United States "any deficiency in redeeming the notes of such association, as mentioned in this act," to make a ratable dividend of the moneys paid over to him by the receiver, " on all claims which have been proved to his satisfaction, or adjudicated in a court of competent jurisdiction." He is to make further dividends, from time to time, as the means shall come into his hands, " on all claims previously proved or adjudicated, and the remainder of the proceeds, if any, shall be paid over to the stockholders of such association, or their legal representatives."

---

* 13 Stat. at Large, 116.

The receiver is the instrument of the comptroller. He is appointed by the comptroller, and the power of appointment carries with it the power of removal. It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action on his part is indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of suit by the receiver. The fact must be distinctly averred in all such cases, and if put in issue must be proved.

The liability of the stockholders is several and not joint. The limit of their liability is the par of the stock held by each one. Where the whole amount is sought to be recovered the proceeding must be at law. Where less is required the proceeding may be in equity, and in such case an interlocutory decree may be taken for contribution, and the case may stand over for the further action of the court—if such action should subsequently prove to be necessary—until the full amount of the liability is exhausted. It would be attended with injurious consequences to forbid action against the stockholders until the precise amount necessary to be collected shall be formally ascertained. This would greatly protract the final settlement, and might be attended with large losses by insolvency and otherwise in the intervening time. The amount must depend in part upon the solvency of the debtors and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases cannot be foreseen. The same remarks apply to the enforced collections from the stockholders. A speedy adjustment is necessary to the efficiency and utility of the law; the interests of the creditors require it, and it

was the obvious policy and purpose of Congress to give it. If too much be collected, it is provided by the statute, that any surplus which may remain after satisfying all demands against the association, shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered. When contribution only is sought, all the stockholders who can be reached by the process of the court may be joined in the suit. It is no objection that there are others beyond the jurisdiction of the court who cannot for that reason be made codefendants.

The claims of creditors may be proved before the comptroller, or established by suit against the association. Creditors must seek their remedy through the comptroller in the mode prescribed by the statute; they cannot proceed directly in their own names against the stockholders or debtors of the bank. The receiver is the statutory assignee of the association, and is the proper party to institute all suits; they may be brought both at law and in equity, in his name, or in the name of the association for his use. He represents both the creditors and the association, and when he sues in his own name it is not necessary to make either a party to the suit.

The 59th section of the act of February 25th, 1863, provides that all suits *by* or *against* such associations may be brought in the proper courts of the United States or of the State. The 57th section of the act of 1864, relates to the same subject, and revises and enlarges the provisions of the 59th section of the preceding act. In the latter, the word "*by*" in respect to such suits is dropped. The omission was doubtless accidental. It is not to be supposed that Congress intended to exclude the associations from suing in the courts where they can be sued. The difference in the language of the two sections is not such as to warrant the conclusion that it was intended to change the rule prescribed by the act of 1864. Such suits may still be brought by the associations in the courts of the United States. If this be not the proper construction, while there is provision

for suits *against* the associations, there is none for suits *by* them, in any court.*

The 59th section directs "that all suits and proceedings arising out of the provisions of this act, in which the United States or its officers or agents shall be parties, shall be conducted by the district attorneys of the several districts, under the direction and supervision of the solicitor of the treasury." Considering this section in connection with the succeeding section, the implication is clear that receivers also may sue in the courts of the United States by virtue of the act, without reference to the locality of their personal citizenship.†

The bill in the case before us contains no averment of any action by the comptroller touching the personal liability of the stockholders. The demurrer of the defendants was therefore properly sustained, and the decree of the Circuit Court is

AFFIRMED.

---

* Theriat v. Hart, 2 Hill, 381, note.
† United States v. Babbit, 1 Black, 61.