CONWAY et al. v. OWENSBORO SAVINGS BANK & TRUST CO. et al.

(Circuit Court, W. D. Kentucky. November 12, 1908.)

1. BANKS AND BANKING (§ 293*)—INSOLVENCY—STOCKHOLDERS—DOUBLE LIABILITY.

The double liability of stockholders of a bank created by Ky. St. 1903, § 547, constitutes a trust fund, so that creditors of an insolvent savings bank may sue on behalf of all the creditors who may become parties to have the trust administered in equity without first having obtained a judgment at law on their demands.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1135; Dec. Dig. § 293.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. COURTS (§ 328*)—FEDERAL COURTS—JURISDICTIONAL AMOUNT.

Where, in a suit to enforce a double liability of stockholders of an insolvent bank imposed by Ky. St. 1903, § 517, the debts of complainants, who were citizens of Indiana, against the bank, a citizen of Kentucky, exceeded $2,000, exclusive of interest and costs, and the trust fund to be collected from the stockholders was nominally $200,000, the amount in controversy was sufficient to sustain federal jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 891; Dec. Dig. § 328.*

Jurisdiction of Circuit Courts as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

3. BANKS AND BANKING (§ 49*)—INSOLVENCY—LIABILITY OF STOCKHOLDERS—ENFORCEMENT.

The double liability of stockholders of an insolvent bank created by Ky. St. 1903, § 517, may be enforced in a suit in equity by one creditor for the benefit of all, or by separate suits against each stockholder by a receiver.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 76; Dec. Dig. § 49.*]

4. JURY (§ 13*)—RIGHT TO JURY TRIAL.

Where, in a suit to enforce the double liability of stockholders of an insolvent bank created by Ky. St. 1903, § 547, issues of fact are raised by the defendant's pleading, defendant has a right to a jury trial of such issues, whether the action be in equity or at law.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 39; Dec. Dig. § 13.*]

5. COURTS (§ 492*)—FEDERAL COURTS—CONFLICTING JURISDICTION.

Stockholders of an insolvent bank should not be twice vexed by a suit to recover the double liability imposed by Ky. St. 1903, § 547, by a suit in the state and federal courts to administer the trust so created, but jurisdiction should be surrendered to the court first acquiring jurisdiction of the subject-matter.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1345; Dec. Dig. § 492.*

Jurisdiction as affected by possession of the subject-matter, see note to Adams v. Mercantile Trust Co., 15 C. C. A. 6.]

6. BANKS AND BANKING (§ 77*)—INSOLVENCY—STOCKHOLDERS—DOUBLE LIABILITY—ASSETS.

The double liability of stockholders in an insolvent banking corporation to creditors, imposed by Ky. St. 1903, § 547, does not constitute assets of the corporation subject to administration, under section 616, providing for the appointment of a receiver to take possession of the bank's books, papers, assets, and business, and administer the same.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 173; Dec. Dig. § 77.*]

Sweeney, Ellis & Sweeney, for complainants.
George W. Jolly and W. Scott Morrison, for defendants.

EVANS, District Judge. The complainants, citizens of Indiana, who allege themselves to be creditors of the Owensboro Savings Bank & Trust Company (hereafter for brevity called "the bank"), filed this bill for the benefit of themselves and all other creditors of the bank who might come in and contribute to the expenses of the suit, and seek not only to establish their claims, but also to have collected and distributed certain sums of money due from the stockholders of the bank under the law of Kentucky presently to be stated, and whereby

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stockholders in such corporations created by that state are made liable to creditors for an amount equal to the face value of their respective shares of stock therein. The individual stockholders, having been made codefendants with the bank, have filed demurrers to the bill, and thereby raised the questions which we will now discuss. Some of those questions were raised and disposed of orally several months ago, when a receiver was appointed in the case, but it is thought to be well to restate the reasons therefor in this way.

Section 547 of the Kentucky Statutes of 1903 is in this language:

"The stockholders of each corporation shall be liable to creditors for the full amount of the unpaid part of stock subscribed for by them, and no stockholders shall be liable because of being a stockholder, for any sum more than to the amount of the unpaid part of stock held by such stockholder of any company, except stockholders in banks, trust companies, guaranty companies, investment companies and insurance companies shall be liable equally and ratably, and not one for the other, for all contracts and liabilities of such corporation to the extent of the amount of their stock at par value, in addition to the amount of such stock; but persons holding stock as fiduciaries shall not be personally liable as stockholders, but the estates in their hands shall be liable, in the same manner and to the same extent as the property of other stockholders, and no transfer of the stock shall operate as a release of any such liability existing at the time of such transfer: Provided, the action to enforce such liability shall be commenced within two years from the time of transfer."

Though not having obtained judgments, the complainants are creditors of the bank to the amount of at least $5,000, and in this suit seek not only to establish their claims, but to obtain the benefit of the statutory provisions just copied. We have concluded that the so-called "double liability" thus provided for necessarily constitutes a trust fund, and, therefore, that the complainants suing for the benefit of all the creditors of the bank who may become parties can maintain this suit to have the trust thus created administered in a court of equity without having first obtained a judgment at law upon their demands. We regard this ruling as clearly supported by Case v. Beauregard, 101 U. S., in its opinion in which, at pages 690, 691 (25 L. Ed. 1004), the Supreme Court said:

"It is no doubt generally true that a creditor's bill to subject his debtor's interests in property to the payment of the debt must show that all remedy at law had been exhausted; and, generally, it must be averred that judgment has been recovered for the debt, that execution has been issued, and that it has been returned nulla bona. The reason is that until such a showing is made it does not appear, in most cases, that resort to a court of equity is necessary, or, in other words, that the creditor is remediless at law. In some cases, also, such an averment is necessary to show that the creditor has a lien upon the property he seeks to subject to the payment of his demand. The rule is a familiar one that a court of equity will not entertain a case for relief where the complainant has an adequate legal remedy. The complaining party must therefore show that he had done all that he could do at law to obtain his rights.

"But, after all, the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means of proof. The necessity of resort to a court of equity may be made otherwise to appear. Accordingly the rule, though general, is not without many exceptions. Neither law nor equity requires a meaningless form. 'Bona, sed impossibilia, non cogit lex.' It has been decided that where it appears by the bill that the debtor is insolvent, and that the

issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference.   Turner v. Adams, 46 Mo. 95; Postlewait & Creagan and Keeler v. Howes, 3 Iowa, 365; Ticonic Bank v. Harvey, 16 Iowa, 141; Botsford v. Beers, 11 Conn. 369; Payne v. Sheldon, 63 Barb. (N. Y.) 169.   This is certainly true where the creditor has a lien or a trust in his favor.

"So it has been held that a creditor, without having first obtained a judgment at law, may come into a court of equity to set aside fraudulent conveyances of his debtor, made for the purpose of hindering and delaying creditors, and to subject the property to the payment of the debt due him.   Thurmond and Others v. Reese, 3 Ga. 449, 46 Am. Dec. 440; Cornell v. Radway, 22 Wis. 260; Sanderson v. Stockdale, 11 Md. 563.

"In Brisay v. Hogan, 53 Me. 554, it was ruled that when a creditor seeks by his bill to obtain payment of his debt from land paid for by the debtor, but conveyed to his wife, a levy of an execution is unnecessary, if the debtor never had legal title to the land.   See, also, Day et al. v. Washburn, 24 How. 352, 16 L. Ed. 551.

"The foundation upon which these and many other similar cases rest is that judgments and fruitless executions are not necessary to show that the creditor has no adequate legal remedy.   When the debtor's estate is a mere equitable one, which cannot be reached by any proceeding at law, there is no reason for requiring attempts to reach it by legal processes.

"But, without pursuing this subject further, it may be said that whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies."

See, also, the remarks of Judge (afterwards Mr. Justice) Jackson in Stutz v. Handley (C. C.) 41 Fed. 537.

If the liability thus created by the statute cannot be regarded as a trust fund and administered upon, collected, and distributed in a court of equity, it cannot be administered and distributed at all, as no mode of otherwise doing so is expressly provided in the statute by which the trust is created.   It would be difficult to imagine a case which would call more strenuously for the aid of an equity tribunal, as distinguished from a common-law court, than one arising under this statute.   Certainly the greatest possible confusion would ensue if each creditor might for himself separately sue each stockholder for his proportion of the individual liability.   How each creditor's share in the liability of each stockholder could be adjusted in such a contingency it is impossible to conceive, and it is therefore obvious that anything other than one comprehensive suit in equity for the settlement of all the questions involved would be wholly impracticable.   Nor do we think that the nice calculations made on behalf of the defendants as to what interest the complainants can have in the fund can be determinative of the question of jurisdiction.   The debts of the complainants who are citizens of Indiana against the Owensboro Savings Bank & Trust Company, a citizen of Kentucky, largely, as we have seen, exceed $2,000, exclusive of interest and costs, and manifestly the trust fund would, at least nominally, be $200,000—the amount of the capital stock.   Precisely what proportion of the liabilities of the stockholders would be paid, and precisely what per centum of his claim each creditor would ultimately obtain, would depend upon the amount realized from the double liability and the amount of claims presented and proved against the fund thus provided.   Possibly the per centum of collections and the per centum of claims proved would be such as to pay complainants nearly or quite all of their demands, so that the calculation

presented by the defendants' counsel is merely theoretical. We think, prima facie, that the amount in controversy very much exceeds $2,-000, besides interest and costs, and possibly it may be correct to say that the whole trust fund is in controversy. See McDaniel v. Traylor, 196 U. S. 426–431, 25 Sup. Ct. 369, 49 L. Ed. 533, and cases cited. At all events, upon the authority of Handley v. Stutz, 137 U. S. 366, 11 Sup. Ct. 117, 34 L. Ed. 706, we have no doubt of the jurisdiction of the court, and so held upon the hearing of the motion for the appointment of a receiver. Besides, the complainants, under cases like Byers v. McAuley, 149 U. S. 620, 13 Sup. Ct. 906, 37 L. Ed. 867, and Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536, have the right to have their claims established.

The complainants joined as defendants numerous holders of the capital stock of the defunct bank, and sought to make the trust fund available by having it realized and collected in this action. The demurrers to the bill have also raised the question of whether the claims against the stockholders individually can be adjudicated and enforced in this suit, or whether proper practice requires that each stockholder shall be sued by the court's receiver in a separate action. It seems to the court that either course is open in a suit to gather in the trust funds, although, if any issues of fact are raised by any defendant's pleading, such defendant might, if he so desired, have the right to a jury to try those issues. So that, while we think the demurrers should all be overruled, we do not mean to say that upon proper application the court would not direct the liability of stockholders to be determined and enforced by actions at law to be brought by its receiver. We do not pass upon that phase of the case now, because it has not been presented. What we hold is that the "double liability" constitutes a trust fund for creditors which it is competent for this court to administer in a suit in equity, and that, in order to do this effectually, the fund would have to be brought into court. We further think that in its discretion the court might pursue either the course of enforcing the liability in this suit, or, by directions to its receiver, cause him to sue each or any of the stockholders in separate actions in any court having jurisdiction of such actions. We think this indicates the proper practice, and that it is supported by the authorities. Terry v. Little, 101 U. S. 216, 25 L. Ed. 864; Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376; Hatch v. Dana, 101 U. S. 205, 25 L. Ed. 885; Stutz v. Handley (C. C.) 41 Fed. 531.

Stated generally, these are the views we entertain, but we have never shut our eyes to the fact, shown by the bill, that certain proceedings are pending in the state court which were begun before the commencement of this action, but the precise scope of which has never been made to appear. Whether those proceedings were adjusted or designed to subject and administer for the benefit of all creditors the trust fund created by the Kentucky statutes, as distinguished from the bank's own assets, we do not know from anything that appears in the record. If, however, that be the scope of the suit in the state court, independently of the statutory suit presently to be referred to, we should probably be compelled to yield to it as having first ac-

quired jurisdiction of the subject-matter.   Otherwise a different result might follow.   At all events, the stockholders should not be twice vexed, once in the state court and once in this, upon the same subject-matter.   Were we to speculate, we might suppose that the suit in the state court was brought under section 616 of the Kentucky Statutes for 1903 alone.   That section is in this language:

"The Secretary of State, upon becoming satisfied that any bank or corporation has become insolvent, or that its capital has become, and is permitted to remain, impaired, or that it has violated any of the provisions of the law under which it was organized, may, with the approval of the Attorney General, apply to the Circuit Court, or judge thereof in vacation, of the county in which the bank or corporation is located, for the appointment of a receiver, who, under the direction of the court or judge, shall take possession of books, papers, and assets of every description, and all business of the bank or corporation, and collect all collectible debts and demands, and sell or compound, under the order of the court, all bad debts, and sell all the real and personal property of the bank or corporation, on such terms as the court may direct. The receiver shall be resident of the county in which the action is pending, and give bond, with good surety, to be approved by the court, and settle his accounts under the general laws."

It will be observed that this section authorizes the appointment of a receiver by the state court whose duty it shall be to—

"take possession of books, papers and assets of every description, and all business of the bank or corporation, and collect all collectible debts and demands, and sell or compound, under the order of the court, all bad debts, and sell all the real and personal property of the bank or corporation, on such terms as the court may direct."

Prima facie this refers to the property and assets of the corporation, as such, and we think that under the language of section 547, supra, the double-liability obligation ought not in any wise to be regarded as the property of the corporation or as any part of its assets. Section 547, which creates the liability, in express terms gives the benefit of it not to the corporation (which indeed has been paid in full for all the stock it had issued), but in express terms makes the stockholders liable to the "creditors," but not to any other person.   We cannot find that the Kentucky Court of Appeals has ever definitely construed these two sections in connection, though in Covington Stone, etc., Co. v. Rosedale, etc., Co., 76 S. W. 506, 25 Ky. Law Rep. 964, it gave some indication of its views thereon.   We are, therefore, without guidance from that tribunal except to the extent just mentioned, and must decide for ourselves.   What we have said will, for present purposes, sufficiently indicate our views, which seem to accord with those of the Court of Appeals.

Orders will be entered overruling each and all demurrers and pleas filed by the complainants to the bill of complaint.