### THOMPSON v. STATE ex rel. BANK COMMISSIONER.

No. 15331—Opinion Filed June 9, 1925.

Rehearing Denied Sept. 7, 1926.

**1. Banks and Banking — Statutory Double Liability of Stockholders not Altered by Depositors' Guaranty Fund Provisions.**

The enactment of the depositors' guaranty fund provisions of the banking laws of Oklahoma did not alter the general statutory double liability of stockholders for the benefit of creditors of an insolvent bank. Under the plenary powers given the Bank Commissioner by section 4165, Comp. St. 1921, such superadded liability of a stockholder could be enforced in favor of the creditors, whether or not the depositors had been paid out of the guaranty fund or warrants issued to them, since, if the depositors were paid out of the guaranty fund or warrants issued, the guaranty fund became as other creditors except, by the statute, the state was given a lien on the assets of the bank to insure repayment to the guaranty fund.

**2. Same—Assessment of Stock — Power of Bank Commissioner.**

Under said section 4165, supra, the Bank Commissioner is clothed with power finally to determine the necessity for making assessment on stock of insolvent bank and to determine the amount of such assessment, without any judicial inquiry into the matter.

**3. Same—Commissioner's Order of Insolvency Conclusive Against Stockholder in Suit to Enforce Double Liability.**

Under said statute, when the Commissioner determines that a state bank is insolvent and that such superadded liability of a stockholder is necessary to pay creditors, his order accordingly to such effect is conclusive upon, and cannot be controverted by, a stockholder sued on his double liability to creditors.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Muskogee County; William H. Zwick, Assigned Judge.

Action by Bank Commissioner against C. T. Thompson. From a judgment for plaintiff, defendant brings error. Affirmed.

Glenn Alcorn and P. E. Gumm, for plaintiff in error.

Clarence J. Mull, for defendant in error.

Opinion by ESTES, C. Parties will be referred to as they appeared in the trial court, inverse to their order here. The State of Oklahoma ex rel. Bank Commissioner had judgment against defendant Thompson on his double liability as a stockholder in the Central State Bank of Muskogee, from which defendant prosecutes error. Plaintiff alleged and proved the order of the Commissioner, adjudging and declaring said bank to be insolvent, closing same, and that he took charge thereof for the purpose of liquidating and winding up its affairs; alleged its capital stock to have been $100,000, with a deficit of assets of $269,253 as compared with liabilities, and that defendant was the owner of 411 shares of its capital stock. Defendant denied such insolvency, and averred that if said bank became insolvent, it was because its assets had been dissipated and wasted by the Commissioner after taking the bank over, setting up the exchange by the Commissioner of its assets for worthless property; that plaintiff had refused to pay the depositors out of the guaranty fund or any other fund, and had refused to issue guaranty fund warrants to the depositors; that the action was not brought for the benefit of the creditors, but for the purpose of the guaranty fund.

1. The first assignment is that plaintiff could not enforce the double liability against defendant as a stockholder prior to the payment of the depositors out of the guaranty fund or the issuance of guaranty fund warrants. The depositors' guaranty fund provisions of our banking laws (now repealed) were enacted by the Legislature pursuant

to the mandate of the Constitution to create a banking department to be under the control of the Bank Commissioner, with sufficient power and authority to control all state banks and to provide for the protection of depositors and individual stockholders. Accordingly, section 4165, Comp. St. 1921, is, in part:

"* * * Whenever the Bank Commissioner shall become satisfied of the insolvency of any such bank or trust company, he may, after due examination of it affairs, take possession of said bank or trust company and its assets, and proceed to wind up its affairs and enforce the pers. nal liability of the stockholders, officers, and directors."

Section 4122, Id., provides the double liability of the shareholders of every state bank This section was carried over after statehood and is likewise a part of the system pursuant to the Constitution. The enactment of the depositors' guaranty provisions did not in any manner alter the stockholders' double liability, which, as said in Delano v. Butler, 118 U. S. 634, "is limited to an amount equal to the par value of the stock held and owned by each stockholder. and exists in favor of the creditors collectively, not severally, and in proportion to the amount of their respective claims again the corporation." Such general liability. imposed by Constitutions and statutes on stockholders for debts of a bank, is now held and recognized generally as primary and not secondary—the stockholders being principals and not sureties. 4 Thompson on Corporations, sec. 4802; 3 R. C. L. 397. In Blackert v. Langford, Bank Commissioner. 74 Okla. 61, 176 Pac. 532, the similarity of federal and our state statutes as to the method for the repair of the capital stock of banks is pointed out in view of such liability of stockholders individually. There it was held that the stockholders' liability is designed solely for the benefit of the creditors and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full. Whether the depositors had been paid out of the guaranty fund or warrants issued to them could not affect the right or power of plaintiff to proceed against defendant as a stockholder for the benefit of creditors. As pointed out in State ex rel. Short v. Norman, Dist. Judge, 86 Okla. 36, 206 Pac. 522, the guaranty fund became a creditor of an insolvent bank by payment to the depositors out of the fund and stood like any other creditor, except that the state, by the statute, was given a first lien upon the assets of the bank to insure repayment to the guaranty fund. Obviously, if no depositors were

paid from the guaranty fund, the state not only had no lien on the assets for such repayment to the guaranty fund, but the guaranty fund was not a creditor and the assets of the bank, including double liability of stockholders, stood to be administered for the benefit of those who were creditors.

2, 3. It is next assigned that plaintiff was not entitled to such judgment against defendant in the absence of a showing that the assets of the bank had been liquidated, or that such assets, together with the liability of the stockholders, were required to satisfy the creditors. This and the remaining assignment, the refusal by the court of testimony of defendant to show that the bank was not insolvent, may be disposed of together. They involve the nature and finality of the order of insolvency made by the Bank Commissioner. It is to be noted that the said section 4165, supra, empowered the Commissioner to proceed to wind up the affairs of the bank and to enforce the personal liability of the stockholders. Pursuant thereto, the Commissioner made the order herein adjudging the bank insolvent. By this action against defendant the Commissioner determined that the full double liability of defendant was necessary, together with the assets of the bank, to meet its obligations. No further order was necessary under the plenary powers given by said statute. No judicial inquiry into such matters was necessary. In Hansom State Bank v. Soderberg et ux. (Wash.) 177 Pac. 827, this question was passed upon. There the double liability of stockholders was stipulated both by the Constitution and the statute and the bank examiner was given practically the same power to enforce the same as the Commissioner in this state. It was there held that such officer was thereby clothed with power finally to determine the necessity for making assessments on stock of an insolvent bank and the amount of such assessment without any judicial inquiry into the matter, and that the superadded liability was enforceable as soon after taking possession of the bank as, in the judgment of such officer, same was necessary. The opinion quotes in re Chetwood. 165 U. S. 443, 17 Sup. Ct. 385, 41 L. Ed. 782, as follows:

"It has been so often decided that the authority vested in the comptroller to appoint a receiver of a defaulting or insolvent national bank, or to call for a ratable assessment upon the stockholders, is not open to objection because vesting that officer with judicial power in violation of the Constitution, that we have recently declined to re-examine that question."

The National Bank Act provides that the Comptroller "may, if necessary to pay the debts of said association, enforce the individual liability of the stockholders." The Federal Supreme Court has held that the comptroller has power to decide when it is necessary to proceed against the stockholders of an insolvent national bank to enforce their personal liability. This matter is referred to his judgment and discretion and his determination thereof is conclusive. A stockholder cannot controvert it. Kennedy v. Gibs n. 75 U. S. (8 Wall.) 498, 19 L. Ed. 476. This construction of the National Bank Act has been followed by the Texas court under a statute providing that the Bank Commissioner "may, if necessary to pay the debts of such state bank, enforce the individual liability of the stockholders." Collier v. Smith (Tex. Civ. App.) 169 S. W. 1108. See, also, Davis v. Moore (Ark.) 197 S. W. 295. In 7 Fletcher on Corporations, secs. 4224 and 4231, citing numerous authorities, it is said:

"In some jurisdictions the statutory liability of stockholders in state banks is enforced by means of assessment levied by the superintendent of banks or other similar officer who is given the right to collect the amount assessed against each stockholder by suit in case the same is not paid. Under such a statute it has been held that it is for the Commissioner to decide when it is necessary to enforce such liability and how much it is necessary to collect, and that his determination in the matter is conclusive; and hence that in an action to enforce such assessment it is not necessary for him to allege and prove the amount of a bank's indebtedness.

"If the liability is a primary one, creditors need not resort to the assets of the corporation before proceeding against the stockholders and may sue and collect from them to the extent of their liability without first exhausting their remedies against the corporation by recovering a judgment against it and issuing an execution thereon or otherwise."

It follows that since the determination by the Bank Commissioner that the bank was insolvent and that the superadded liability of defendant was necessary to pay creditors, there was no error of the court in refusing the proffered testimony of defendant that the bank was not insolvent. The order of the Bank Commissioner had the force and effect of a judicial determination. An inquiry into the facts thus determined would be analogous to a collateral attack upon the judgment of a court. If the order of the Commissioner bore such finality it could not be thus attacked. However, if said bank was not in fact insolvent,

and if the Commissioner took the same over under such circumstances and dissipated its assets, a grievous wrong was suffered by defendant. Our Constitution provides, in substance, that for every wrong there shall be a remedy. We do not hold that defendant would be remediless because of such finality of such order, for to do so would contravene both the state and federal Constitution, for taking property without due process of law. Further discussion of the remedy is not called for here except to observe that it would be by direct attack. We hold that defendant could not litigate those questions in this action to enforce his double liability as a stockholder. Let the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 7 C. J. p. 507 (1926 Anno). (2) 7 C. J. p. 482 (1926 Anno). (3) 7 C. J. p. 482 (1926 Anno).