STATE ex rel. MOTHERSEAD, Bank Com'r, v. KELLY.

No. 18099. Opinion Filed Jan. 7, 1930.

Erman S. Price, M. B. Cope, J. P. Wishard, and M. W. McKenzie, for plaintiffs in error.

Beets, Bessey & McIntosh and Walter Marlin, for defendant in error.

RILEY, J. This action was instituted to recover upon an assigned statutory stockholder's liability arising out of an insolvent state bank. The trial court sustained a demurrer to the third amended petition. The material facts presented follow:

Defendant Kelly was the owner of $3,000 par value stock of the Blaine County Bank. The Bank Commissioner of the state of Oklahoma, on December 21, 1925, declared said bank insolvent; that official assessed the full statutory liability against the stockholders and, upon order of the district court of Blaine county, sold the assets of the insolvent bank, including the assessed stockholder's liability, to the First Bank & Trust Company of Watonga; whereupon Kelly declined to pay the assessment in the amount of $3,000, levied against him, and assigned. By the third amended petition the State of

Oklahoma ex rel. the Bank Commissioner joins with the assignee, the First Bank & Trust Company of Watonga, and asserts claim against Kelly with allegations aforesaid and with results as stated.

It is agreed by the parties that the only question presented by this appeal is whether the Bank Commissioner could legally sell and assign what is known as stockholder's double liability.

Section 4122, C. O. S. 1921, provides:

"The shareholders of every bank organized under this article shall be additionally liable for the amount of stock owned and no more."

There can be no question but that in a proper case, i. e., in the event of insolvency of a state bank, a shareholder would be liable to the agency of the state; the issue presented, however, is whether such a liability may be assigned; does that liability constitute an ordinary asset of the failed bank, and is it classed with debts, real or personal property, belonging to the bank as may be sold and assigned under authority conferred by statute or otherwise?

It is admitted by both parties to this appeal that the provisions of section 4167, C. O. S. 1921, inhibit the inclusion of stockholder's liability in the sale or compounding of bad or doubtful debts as therein authorized. That provision reads:

"The Bank Commissioner shall take possession of the books, records and assets of every description of such bank or trust company, collect debts, dues and claims belonging to it, and upon order of the district court, or judge thereof, may sell or compound all bad or doubtful debts, and on like order may sell all the real or personal property of such bank or trust company upon such terms as the court or judge thereof may direct, and may, if necessary, pay the debts of such bank or trust company and **enforce the liability of the stockholders, officers and directors; provided, however, that bad or doubtful debts as used in this section shall not include the liability of stockholders, officers or directors."**

But counsel for plaintiffs in error suggests that the section has been repealed, by implication, in the enactment of section 2, chapter 80, S. L. 1924, which enactment omitted the proviso.

We are not unmindful of a rule of law with relation to legislative intent and repeal of statutes by implication to the effect that:

"A statute revising the whole subject-matter of former acts, containing in the main the provisions of the former acts, and evi-

dently intended as a substitute for them, although it contains no express words to that effect, operates to repeal the former acts." Smock v. Farmers Union St. Bk., 22 Okla. 825, 98 Pac. 945.

Yet it is impossible to make applicable that rule, and the applicability of it is wholly immaterial for the reason that the section most recently adopted in no manner makes the double liability an asset of the bank, nor does it confer power by implication or otherwise upon the Bank Commissioner to assign such liability, but, on the other hand, specifically imposes the duty upon that official to "enforce the liabilities of the stockholders of such bank." The section now reads:

"Upon taking possession of the property and business of such bank the Commissioner is authorized to collect money due it and do such other acts as are necessary to conserve its assets and business and shall proceed to liquidate the affairs thereof, as hereinafter provided. The Commissioner shall collect all debts due and claims belonging to it, and, upon order of the district court of the county in which it is doing business, may sell or compound all bad or doubtful debts, and, in like order, may sell all of its real and personal property on such terms and at public or private sale as the court shall direct, and shall enforce the liabilities of stockholders of such bank."

Our analysis of the provisions of that statute discloses that four privileges and two duties were conferred upon the Bank Commissioner, as follows:

(1) Shall collect all debts due and claims belonging to the bank.

(2) May sell or compound all bad or doubtful debts, when authorized.

(3) May sell real and personal property at public or private sale, when authorized.

(4) Shall enforce liability of stockholders.

One and 4 are duties to be performed, and 2 and 3 are privileges conferred.

What is this stockholder's liability, and for whose benefit is it created?

It was designed solely for the benefit of creditors and constitutes a fund available only when the bank is insolvent and thus rendered unable to meet its liabilities in full. The corporation itself has no authority over the fund and cannot either compel its payment or by any act on its part release the stockholder therefrom. It amounts, for all practical purposes, to a reserve or trust fund, to be resorted to only in pro-

ceedings in liquidation, when necessary to meet the payment of obligations of the corporation. It is limited to an amount equal to the par value of the stock held and owned by each stockholder and exists in favor of the creditors collectively, not separately, and in proportion to the amount of their respective claims against the corporation. Trust Co. v. Bradbury, 117 Minn. 83, 134 N. W. 513; Blackert v. Lankford, 74 Okla. 61, 176 Pac. 532.

In the latter case our court quoted from Thompson on Corporations, as follows:

"Their liability (stockholders'—ours) is not only primary, but generally is direct to the creditors, and may be enforced without any proceedings whatever against the corporation, unless a suit against the corporation is made a condition precedent. The liability of the stockholder is, in our opinion, says the Supreme Court of California, as distinct and separate from that of the corporation as it would be if the act had made no provision for any other liability than that of stockholders for debts of the company.* * * The stockholders are liable as principals and not as sureties or guarantors. This liability is said to be a security for the exclusive benefit of creditors and over which the corporate authorities have no control."

This doctrine was approved in Reigel v. Planters State Bank, 100 Okla. 42, 227 Pac. 105, wherein this court specifically considered stockholders' liability of an insolvent bank where the assets of the defunct bank had been sold to another bank and the second bank had assumed payment of the obligations of the first bank. There this court affirmed the trial court's judgment that such stockholders were not liable to a creditor under such circumstances. See, also, Page v. Jones, 7 Fed. (2nd.) 541, wherein Justice Sanborn cited with approval, Blackert v. Lankford, supra.

In Farmers Bank v. Scott, 139 S. W. 801, the Kentucky Court of Appeals considered whether such statutory liability imposed upon shareholders was an asset, right or interest of the insolvent bank, assignable in the absence of statutory provision conferring that right. It held:

"Neither the corporation nor its assignee nor receiver can enforce such liability as that in question." Citing Ronner v. Dwiggins, 147 Ind. 238, 46 N. E. 580, 582, 30 L. R. A. 645.

In the Dwiggins Case, the Indiana court held:

"Neither the receiver, an assignee in bankruptcy, nor an assignee under a voluntary general assignment for the benefit of creditors, each of whom represent creditors as well as the insolvent, acquire any right to enforce a collateral obligation given to a creditor or to a body of creditors by a third person for the payment of the debts of the insolvent."

Moreover, the federal courts so held in Conway v. Owensboro Savings Bk. & Trust Co., 165 Fed. 822, 823:

"The double liability of stockholders in an insolvent banking corporation to creditors, imposed by Kentucky Statutes 1903, sec. 547, does not constitute assets of the corporation subject to administration under sec. 616, providing for the appointment of a receiver to take possession of the bank books, papers, assets and business, and administer the same."

The New York Court of Appeals so held:

"Claim of creditors of an insolvent bank to enforce the double liability of stockholders, imposed by Constitution, art 8, sec. 7, and Bank. Law (Consol. Laws c. 2) sec. 71, is not an asset belonging to, coming through, or asserted in behalf of the corporation, but is an independent original remedy given to the creditors; the stockholders being distinguished from the corporation in respect to such liability, and being the only person interested in the question whether there is an existing indebtedness on the part of the corporation." Assets Realization Co. v. Howard, 211 N. Y. 430, 105 N. E. 680.

The case of Waldron v. Alling, 76 N. Y. S. 250, holds to the contrary, and in effect that such stockholders' liability is an asset of the bank, assignable as are other assets. That case stands alone against the almost unbroken current of authority. Its origin is not from the court of last resort in that state. It seeks to support itself by construction of the national banking law, but we observe that in Moss v. Whitzel, 108 Fed. 579, the authorities of the Supreme Court of the United States on this question are reviewed and distinguished and therein is stressed the opinion in Kennedy v. Gibson, 8 Wall. 506, 19 L. Ed. 476. We quote:

"These rulings go no further than what the language implies, and the language must be restrained to the subject-matter under consideration. The sense is that whether or not an assessment on the stockholders shall be made, and the amount thereof, in the first instance, are solely matters of administrative policy and determination, and are addressed to the discretion of the Comptroller. But the Supreme Court had not held that a stockholder, when sued by the receiver, is precluded from defending on the ground that he is not a stockholder, or that he owes nothing as such stockholder, or that there is in fact no debt or obligation of the bank existing at the time of the suit against the stockholder. If this defense is not permitted to the stockholders when called upon to

pay an assessment based upon such judgment not conclusive against him, when, where, and how is he to find relief from the unjust exaction demanded of him? He has not hitherto had his day in court. He had no hearing before the Comptroller prior to the assessment. The statute makes no provision for such hearing before the Comptroller. The Comptroller acts upon reports laid before him by the receiver respecting the liabilities of the bank and its assets. On this ex parte showing he decides as to the necessity and amount of the assessment. This action of his is not reviewable. If the stockholder when sued by the receiver stands mute and suffers judgment to go by default, had he not had his day in court? Could he pay the judgment against him, and then have any standing anywhere in court to restrain the receiver from paying over the fund to the judgment creditor of the bank? It is said that the statute provides that if there is any surplus in the hands of the receiver after the debts of the insolvent bank are paid, it would go back, pro rata, to the stockholders who paid their assessment. This would afford very little consolation to the stockholder after the money collected from him had been paid over in satisfaction of the debt for which the stockholder is not in law and conscience bound. On the other hand, the receiver (so says the Supreme Court) 'represents both the creditors and the association.' Kennedy v. Gibson, 8 Wall. 506, 19 L. Ed. 476. And therefore the judgment against him in this action would conclude him both as to the receiver and the creditor. Cromwell v. Sac. Co., 94 U. S. 351, 24 L. Ed. 195. It seems to me that, to sustain the contention of plaintiff, the court must read into the statute not only that Congress intended that the Comptroller should be the exclusive judge as to when an assessment on the shareholders should be made, and the amount thereof, but that he is also so far clothed with judicial functions as to conclude the shareholder from contesting the fact as to the validity or existence of any liability which the property of the shareholder is taxed to pay. This would carry the representative character of the receiver beyond what the Supreme Court has said—that he represents the creditors and the association—by holding that he also represents the shareholders, when called upon to pay the assessment. It seems to me that this would overturn the maxim that every man is entitled to his day in court, and would violate the Fifth Amendment to the federal Constitution, in depriving the shareholder of property 'without due process of law.' While the phrase 'due process of law,' as applied in this country, is more or less controlled by its application to the facts and conditions of the particular case, yet in its universality it implies the right of the person to be affected by a judicial proceeding against him 'to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense: to be heard by testimony or otherwise and to have the right of controverting by proof every material fact which bears on the question of right in the matter involved. If any question of fact or liability be conclusively presumed against him, this is not due process of law'."

As stated in the federal decision just mentioned, so it is with the state of Oklahoma, concerning prior rulings of this court as applied to the Commissioner's determination of the amount of liability urged upon us as concluding the rights of stockholders.

Such decisions are typified by:

Thompson v. State ex rel. Bk. Commissioner, 119 Okla. 166, 248 Pac. 1110:

"Under said statute (4165, C. O. S. 1921), when the Commissioner determines that a state bank is insolvent, and that such super-added liability of a stockholder is necessary to pay creditors, his order according such effect is conclusive upon, and cannot be controverted by, a stockholder sued on his double liability to creditors."

Such rulings go no further than the language implies, and the language must be restrained to the issue there presented. In all such cases, the subject-matter was restricted to the assessment as an administrative policy, the necessity therefor, and the amount thereof in the first instance. Such decisions do not preclude a stockholder from defending on the ground that there is no debt existing for which he is liable.

An ex parte determination by the Bank Commissioner of the amount of liability cannot constitute due process of law, as against right of a shareholder, where the Commissioner delivers the assets, including stockholder's liability, "lock, stock and barrel," upon assignment to another, and, as in the present case, where the Commissioner, as a statutory designated agency, does not himself enforce the stockholder's liability for the benefit of the whole class of creditors, existing at the time of insolvency. Holden v. Hardy, 169 U. S. 366; Zeigler v. R. R. Co., 58 Ala. 599; Charles v. City of Marion, 98 Fed. 166.

The Bank Commissioner's demand for stockholders' liability must have always been considered incontrovertible and conclusive only as an administrative measure, and in view of future administration of the fund thus acquired by that officer, in which case the surplus, if any, would accrue to the benefit of such stockholders. The law so provides (section 1, ch. 80, S. L. 1923-24):

"If, after the liquidation of such insolvent corporation, wherein the depositors and creditors of said insolvent corporation shall have been paid in full, there remains in the hands of the Bank Commissioner any assets, such remaining assets shall revert to the stockholders of said insolvent corporation."

Consequently all former decisions are presumed to have been determined in view of such provision contained in the statute. The justice of this view was early recognized by the federal courts. We quote from Kennedy v. Gibson, 8 Wall. (U. S.) 498:

"The 50th section of the act provides that the receiver, under the direction of the Comptroller of the Currency, shall take possession of the books and assets of every description of the association, collect all the debts and claims belonging to it, and may—proceeding in the manner prescribed—sell, or compound bad and doubtful debts, and sell all of its real and personal property; 'and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders.'* * *

"It would be attended with injurious consequences to forbid action against the stockholders until the precise amount necessary to be collected shall be formally ascertained. This would greatly protract the final settlement, and might be attended by large losses by insolvency and otherwise, in the intervening time. The amount must depend in part upon solvency of the debtors and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases cannot be foreseen. The same remarks apply to the enforced collections from the stockholders. A speedy adjustment is necessary to the efficiency and utility of the law; the interests of the creditors require it, and it was the obvious policy and purpose of Congress to give it. If too much be collected, it is provided by the statute that any surplus which may remain after satisfying all demands against the association shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered."

So our court heretofore has simply said in effect that delay in collecting from stockholders the statutory liability may be prejudicial to creditors. Therefore, the Bank Commissioner in charge of an insolvent bank may levy such assessment as he deems necessary; if he takes too much, the surplus will revert to the stockholders. Consequently we hold that the assessment is not a liquidated claim within the legal meaning of the term.

In C., R. I. & P. Ry. Co. v. Mills (Colo. App.) 69 Pac. 317, it was held:

"A claim is liquidated when the amount due is fixed by law or has been ascertained and agreed upon by the parties, otherwise it is not.* * *"

Herein the amount of the assessment against Kelly was not agreed upon by the parties. It was not definitely fixed by operation of law, for the reason of the surplus and residue feature of the law heretofore pointed out.

We do not know the consideration paid by the assignee bank in the case at bar, but let us consider an instance where a bank is capitalized at $20,000. The Bank Commissioner levies an assessment of 100 per cent. and by order of court sells the assessment for 75 per cent. as a doubtful claim. Upon liquidation only 75 per cent. assessment is necessary to pay creditors, yet the assignee of the assessment sues the stockholders for $20,000. Should the assignee recover from the stockholders the full face value of the claim assigned, the stockholders undoubtedly would be penalized in the sum of $5,000, and in which event they would be deprived of property without due process of law, for under the contrary view the amount of the claim would be fixed, and fixed in an ex parte proceeding without providing a day in court for the stockholders.

We, therefore, conclude that the order of assessment of the Bank Commissioner is not a fixed and liquidated claim, and neither does the same become an asset or property of the bank subject to assignment.

Moreover, we are of the opinion that the current authority is opposed to maintenance of a suit by a creditor to recover such stockholders' liability, as in our state, by statute, the sole power is conferred upon an agency such as the Bank Commissioner.

"Creditors must seek their remedy through the Comptroller in the mode prescribed by the statute; they cannot proceed directly in their own names against the stockholders or debtors of the bank." Kennedy v. Gibson, supra; State ex rel. Short, Atty. Gen. v. Norman, Judge, 86 Okla. 36, 206 Pac. 522; Kimbriel v. State, 106 Okla. 177, 233 Pac. 420; In re Okla. St. Bk. of Caddo, 110 Okla. 295, 237 Pac. 603; McAfee v. State, 116 Okla. 30, 243 Pac. 721.

As in the latter case this court held this system of law, and particularly the section thereof specifically referred to in this opinion, conferred upon the Bank Commissioner, or some person under his control and direction, the sole and exclusive jurisdiction to take possession of an insolvent bank and to proceed to wind up its affairs and enforce the personal liability of the stockholders, officers, and directors.

The law today is the same in this respect as when those decisions were rendered. Therefore, the Bank Commissioner, alone, is empowered by law to prosecute an action to enforce the stockholders' liability. Lang v. Osborn Bk. et al. (Ohio) 125 N. E. 105; 20 R. C. L., sec. 4, p. 664; State v. Quigley, 73 Okla. 296, 220 Pac. 918.

For the reason of the nonassignability of the claim, the First Bank & Trust Company is not a real party in interest, and therefore cannot maintain the suit. Broadbent v. McFerson (Colo.) 250 Pac. 852.

It is contended by counsel that, even if the assignee bank cannot bring action, inasmuch as the Bank Commissioner is made a party, he can prosecute the suit for the bank's benefit.

The petition alleges that the Bank Commissioner administered the affairs of said bank to the final liquidation and sale of said bank and to the reimbursement of the depositors of said bank.

According to the language used the only person to be benefited by the action is the assignee bank. The depositors have been paid. The question occurs as to whether the First Bank & Trust Company is entitled to be subrogated under the sale contract. We hold not, for the simple reason that the right of creditors against the stockholder is measured, not by a contract of sale executed by the Bank Commissioner, but by the statute. The Bank Commissioner's right and duty was simply to enforce the liability by collection when and where necessary to pay creditors or depositors. The right could not be farmed out to private individuals, and it ought not to require argument to make it clear that where there is no right or power of assignment. there can arise no right of subrogation. Brown v. Sheldon St. Bank (Iowa) 117 N. W. 289; Trust Co. v. Hart, 76 Fed. 673, 22 C. C. A. 473, 35 L. R. A. 352.

There is another reason that defeats subrogation as applied to these facts. The right of subrogation, being an equitable one, is subject to the general qualification by which all equities are affected, viz., it must not be enforced to the detriment of equal or superior equities existing in other parties, nor where its enforcement would operate to the prejudice or injury of the creditor. It will not be enforced against a legal right. Southwestern Surety Ins. Co. v. Farriss, 118 Okla. 188, 247 Pac. 392.

Therefore, the defendant stockholder, Kelly, cannot be deprived of his legal and statutory right to the residue of the assessment against him, if any, after payment of creditors by the equitable doctrine of subrogation.

It is urged that the sustaining of the demurrer permits a collateral attack upon a judicial proceeding, for that the petition alleges a sale of the assets under order of the district court of Blaine county, and that the result is an avoidance and evasion of the force and effect in a proceeding not provided by law.

The answer is that the district court had no power or authority to approve the attempted assignment of the shareholder's liability. Such order was void to that extent; being void for want of jurisdiction, it is subject to attack in collateral proceedings. S. W. Surety Ins Co. v. Farriss, supra.

Counsel seek indulgence or presumption in favor of their petition. This court has held that as applied to a third amended petition no presumptions may be indulged. Schilling v. Moore, 34 Okla. 155, 125 Pac. 487:

"After a party has amended his petition three times and a demurrer is again sustained to it, no presumption will be indulged in favor of the pleading."

The judgment is affirmed.

MASON, C. J., LESTER, V. C. J. and CLARK, HUNT, HEFNER, SWINDALL, and ANDREWS, JJ., concur.

CULLISON, J., dissents.

Note.—See "Banks and Banking," 7 C. J. § 110 p. 520 n. 40. "Constitutional Law," 12 C. J. § 997, p. 1220, n. 86.