## FISHER v. LEFFERTS.

(Circuit Court, E. D. Pennsylvania. January 18, 1901.)

### No. 301.

**1. JUDICIAL SALE—RULE TO SET ASIDE—COLLATERAL ATTACK.**

Where a receiver of a national bank obtains a judgment in the circuit court, and afterwards sells that and other judgments under an order of the circuit court, and marks the judgment to the use of the purchaser, who has execution issued thereon, a rule to set aside the sale, which is in form an attack on the decree ordering such sale, cannot be maintained by the judgment debtor in the action in which the judgment was rendered, since it is a collateral attack on the order of sale.

**2. SAME.**

Where a receiver of a national bank obtains a judgment, and sells it, and marks it to the use of the purchaser, by order of the circuit court, the judgment debtor, who confessedly owes the money, cannot maintain a rule to set the sale aside, since the order of sale and execution will protect him in paying the money to the use plaintiff.

Rule to Set Aside Sale of Judgment.

George D. Codman, for plaintiff.
John Lefferts, for defendant.

J. B. McPHERSON, District Judge. This case arises upon the following facts: In May, 1891, B. F. Fisher, the legal plaintiff in this suit, was appointed receiver of the Spring Garden National Bank, and entered upon the duties of his appointment. Not long afterwards an assessment was made by the comptroller of the currency to enforce the additional liability of the shareholders under the act of congress, and this suit was brought to recover the assessment due from the defendant. A judgment was recovered in June, 1892, for the full amount of the claim, but, for some reason that does not appear, it was never paid. In April, 1899, the receiver presented a petition to the circuit court, asking leave to sell this judgment, with many other uncollected claims, such as notes, judgments, stocks, and bonds belonging to the bank, and the court thereupon entered a decree giving the power to sell. Sale was accordingly made, this judgment being included, and the receiver's return was duly confirmed by the court. The judgment was marked by the receiver to the use of the purchaser, Alexander Balfour, and not long afterwards the use plaintiff issued execution and levied upon the defendant's property.

This rule was then obtained to set aside the sale that had been made under the decree of the circuit court, the proceedings upon which the decree is founded appearing of record at No. 25, April sessions, 1899. There are two reasons why this rule must be discharged. In the first place, in its present form, the petition is a collateral attack upon the decree ordering the sale, and therefore cannot be entertained. The proper procedure would have been to present a petition to the circuit court in the case wherein the decree was made, thus directly attacking the decree, and making the receiver a party to the proceeding. He has had no notice of this rule, and no opportunity to defend the validity of a decree that was made upon his application.

But, even if the petition were before the court in the proper proceeding, I should dismiss it because, in my opinion, the petitioner has no standing to raise the question whether or not the sale was good. That the sale was invalid, he cites In re Earle (C. C.) 96 Fed. 678, as a decisive authority. But the first point to be considered is his own relation to the controversy. Confessedly, he owes the money to some one, and I think it is no affair of his whether the legal plaintiff or the use plaintiff should receive it. The defendant is no doubt interested to see that he is protected in making payment, but it need scarcely be said that if he pays in obedience to an execution, and in accordance with an unreversed decree of a court of record, he is in no danger of being obliged to pay a second time. Whether the use plaintiff is entitled to retain the money against a demand by the receiver does not concern the defendant.

The rule is discharged, the petition dismissed, and the order of July 27, 1900, staying execution, is set aside.