IRA M. COBE, *Appellee*, V. HERBERT HACKNEY, *as Executor, etc., Appellant.*

No. 16,619.

SYLLABUS BY THE COURT.

PARTIES—*Real Party in Interest—Assignee of Receiver of a National Bank—Note Executed by Stockholder.* The receiver of a national bank, with the direction and approval of the comptroller of the currency and under an order of the district court of Shawnee county, sold, indorsed and transferred to the plaintiff certain promissory notes, executed by a stockholder of the bank in settlement of his statutory liability under the provisions of the national banking act. The notes were payable to the receiver, and the proceeds thereof were applied, under the direction of the comptroller, in satisfaction of the claims of the creditors of the bank. *Held,* that the purchaser could maintain an action upon the notes, and that the defendant, having suffered no prejudice to his defense by the transfer, is not in a position to question the jurisdiction of the district court to make the order, or the validity of the sale, or the title of the purchaser.

Appeal from Shawnee district court. Opinion filed November 5, 1910. Affirmed.

STATEMENT.

GEORGE HACKNEY in his lifetime was a stockholder of the First National Bank of Topeka. In July, 1905, the bank failed, and James T. Bradley was appointed receiver. Immediately thereafter the comptroller of the currency, for the purpose of enforcing the individual liability of the stockholders of the bank under the provisions of the national banking act, made an assessment of 100 per cent upon each share of stock. August 7, 1905, George Hackney paid twenty-five per cent of his assessment in cash, and executed three promissory notes for the balance, payable to James T. Bradley, receiver, due in thirty, sixty and ninety days after date. These notes were held by the receiver until July 20, 1907, at which time he sold and indorsed them

to the plaintiff, who at the same time purchased the bulk of the assets of the bank then in the hands of the receiver. This suit was brought to recover the amount due on the notes. From a judgment in favor of the plaintiff the defendant appeals.

The petition alleged that on the 20th day of July, 1907, James T. Bradley, as receiver of the bank, with the approval of the comptroller of the currency, and under the order of the district court of Shawnee county, Kansas, of that date, sold, indorsed and delivered the notes to the plaintiff. The answer admitted the execution of the notes, and alleged that they were wholly without consideration, save as written obligations to pay the remaining installments of the assessment upon the shares of stock held by George Hackney; that the individual liability of a stockholder in a national bank is a statutory liability for the benefit of the creditors of the bank only, and is to be enforced by the receiver for the benefit of the creditors only so far as and when the same is necessary to pay the debts of such bank; that the notes given by the defendant were not for debts due the bank nor a part of the property or assets of the bank which could be sold and transferred under orders of a court; that no court was empowered by the national banking act to authorize them to be sold and transferred by the receiver; that James T. Bradley, as receiver, had no power or authority under the provisions of the national banking act or by virtue of the assessment upon the shareholders made by the comptroller of the currency to sell and transfer the notes; and that the comptroller had no power or authority under the provisions of the national banking act to authorize the receiver to sell and transfer the same or to approve a sale made by the receiver.

As a further defense, it was alleged that notwithstanding the order of the district court and the pretended sale, indorsement and transfer of the notes sued on, James T. Bradley, as receiver of the First Na-

tional Bank, is still the owner and holder of the notes, and that in the absence of any receiver the defendant, as executor of the last will and testament of George Hackney, deceased, is subject to a suit to collect the same by the creditors of the bank, and that, by reason of the premises; the plaintiff never became the owner or holder of the notes and is not the real party in interest therein or otherwise authorized to maintain any suit thereon.

A reply was filed alleging that when the plaintiff purchased the notes they were estimated and appraised by the receiver at their full face value and that the plaintiff paid to the receiver the full face value thereof in cash, and that the money so received has been distributed by the receiver, by order and authority of the comptroller of the currency, to the bank's creditors in proportion to the indebtedness to each creditor, and that the creditors, including George Hackney, who in his lifetime was a creditor of the bank, had received the same without objection.

*Leonard S. Ferry, Thomas F. Doran,* and *Edwin A. Austin,* for the appellant.

*Bennett R. Wheeler,* and *John F. Switzer,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: There is no dispute as to the facts. The order of the district court directed the receiver to sell to the plaintiff certain assets of the bank and also "any and all claims against stockholders." The exact language of the federal statute which it is claimed by the plaintiff authorized the district court of Shawnee county to make the order in question reads as follows:

"Such receiver, under the direction of the comptroller, . . . . upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real

Cobe v. Hackney.

and personal property of such association, on such terms as the court shall direct." (U. S. Rev. Stat. § 5234.)

The principal contention of the defendant is that the action can not be maintained by the plaintiff, first, because the district court of Shawnee county was without jurisdiction to make an order authorizing and directing the sale and transfer of the notes to the plaintiff, for the following reasons: (*a*) The district court of Shawnee county is not a court of "competent jurisdiction" within the meaning of the foregoing section; (*b*) the notes sued on are not "bad or doubtful debts," nor are they personal property or assets of the bank; (*c*) that the individual liability of the stockholders of a national bank, as well as the written obligation to pay the same, is a statutory liability for the benefit of the creditors of the bank only, and, being no part of the assets of the bank, could not be sold by order of any court or under the directions of the comptroller of the currency; (*d*) conceding that the court is a court of competent jurisdiction within the meaning of section 5234, the order was an *ex parte* one, made without jurisdiction, for the reason that no summons was issued, no suit was filed, no action was begun, and there was nothing before the court except the petition of the receiver for an order to sell the assets in a summary way. The plaintiff, on the other hand, places some reliance upon the fact that the order made by the district court recites that the offer of the plaintiff to the receiver for the purchase of certain assets of the bank and claims of stockholders had been submitted to the comptroller of the currency and duly approved by him; that the committee of the stockholders of the First National Bank of Topeka and the chairman of the committee of creditors had been duly advised of the terms of the offer, and duly notified that an application for the order would be made at the time and place, and that no objection to the offer being accepted had been made by anyone.

The case was ably presented at the oral argument and has been briefed by both sides with unusual care and thoroughness. Many of the legal questions raised by the defense are interesting, but in our view of the law which must control the case few of these questions need be decided. It can not be questioned that the notes were executed by George Hackney in settlement of his individual liability as a shareholder of the bank. It is true, this liability is a statutory one, but it furnished a good consideration for the execution and delivery of the notes. They were made payable to the order of, and delivered to, James T. Bradley, receiver of the bank. They are ordinary promissory notes. Unless there is, therefore, some statutory provision (and we have been cited to none) which prohibits the receiver from disposing of obligations given in settlement of a stockholder's liability, it would seem that he would have the same right to make a *bona fide* sale and transfer of a note given in satisfaction of such liability that he would have to collect the amount due thereon from the maker.

Notwithstanding the provision of the code requiring all actions to be brought in the name of the real party in interest, it is the rule in this state that the legal holder of commercial paper may maintain an action thereon, and that the maker can not question his title unless the maker is thereby in some way prejudiced in his defense. (*Manley v. Park,* 68 Kan. 400; *Graham v. Troth,* 69 Kan. 861; *Greene v. McAuley,* 70 Kan. 601.) In the case last cited the first paragraph of the syllabus reads:

"Where a promissory note is sued upon by the holder, to whom it has been unconditionally assigned by the payee, a complete defense on the sole ground that the plaintiff is not the real party in interest can only be established by proof of facts showing that a payment to him would not be a protection to the defendant against further liability on the note."

(See, also, 8 Cyc. 66.)

It is doubtless true that the statutory liability of a

shareholder in a national bank is not, strictly speaking, an asset of the bank, but is an obligation created by statute for the sole purpose of reimbursing creditors of an insolvent bank. Nevertheless it is an asset in the hands of the receiver, to be collected and the proceeds applied under the direction of the comptroller of the currency in payment of claims of creditors of the bank. In the case of *Williamson v. American Bank*, 109 Fed. 36, it was said:

"While this liability is not strictly an asset of the bank, and could not be enforced for its benefit as a corporation, yet the intention of congress, as manifested by the act of June 30, 1876, was evidently to treat it as a means of creating a fund to be applied with and in aid of the assets of the bank in all cases of voluntary, as of involuntary, liquidation." (p. 38.)

The supreme court of the United States used almost the same language in the case of *Richmond v. Irons*, 121 U. S. 27, where it was said in the opinion:

"The intention of congress evidently was to provide ample and effective remedies in all the specified cases for the protection of the public and the payment of creditors, by the application of the assets of the bank and the enforcement of the liability of the stockholders. Admitting that this liability is not strictly an asset of the bank, because it could not be enforced for its benefit as a corporation nor in its name, yet it is treated as a means of creating a fund to be applied with and in aid of the assets of the bank toward the satisfaction of its obligations." (p. 50.)

In *Schaberg v. McDonald*, 60 Neb. 493, the administratrix defended against a claim filed in the probate court based upon a judgment obtained against the decedent by the receiver of a national bank upon the stockholder's liability. During the pendency of the action the claim which was the subject matter of the controversy had been by the receiver sold with other assets of the bank to a third party, upon an order of the United States district court. The administratrix set up the defense that the money due on the claim was a trust

fund for the benefit of creditors, and that such claim
could not be sold, transferred, compounded or other-
wise disposed of, but must be collected and the proceeds
distributed among the creditors of the bank. The court
held that, conceding this contention of the defendant to
be correct, it furnished no defense to the action. In
the opinion it was said:

"The alleged transfer in nowise changes, increases
or lessens the liability of the estate. If it be true that
the sale is void for the reasons urged, then the right of
the receiver to collect the money for the benefit of the
creditors remains unquestioned, and, if the sale be valid,
the authority of the receiver to continue as plaintiff is
given by the statute referred to. If such sale is ir-
regular or voidable only, then it is to be treated as a
valid sale until, by proceedings in the proper tribunal
whence the order of sale emanated, the irregularity is
corrected. In no view of the case is it a matter which
vitally concerns the stockholder who is liable for the
assessment, or materially affects the merits of the obli-
gation resting upon him under his shareholder liability.
It becomes a material and vital question only as be-
tween the creditors and the receiver of the bank who
administers the insolvent estate for their benefit, and
the rights and obligations of these parties can not be
tried in the present suit." (p. 500.)

The fact that the claim in that case against the stock-
holder for his statutory liability had been reduced to
a judgment does not, in our opinion, affect the matter.
In that case, as in this, it was contended that the de-
fendant, as the personal representative of the decedent,
was still subject to a suit to collect the same indebted-
ness by the creditors of the bank notwithstanding the
sale, indorsement and transfer of the claim. The court,
in the opinion, answered this contention as follows:

"It is urged that the claim having been, as claimed,
illegally sold, payment by the estate would not release
it from future demands by the creditors of the bank
upon the same assessment. The claim is founded upon
an assessment ordered by the comptroller of the cur-
rency upon the stock of the insolvent bank, owned by
the deceased. It was presented and filed against the

estate because of the liability thus owing. The litigation following is for the purpose of testing such liability and none other. Its satisfaction upon final judgment would, in fact and upon principle, absolve the estate from any further liability. The liability of the estate can not be enlarged or diminished by the application made by the receiver of the proceeds derived therefrom. The order of the comptroller directing the assessment is conclusive. *National Bank v. Case,* 99 U. S. 628. The right of the estate to a discharge from such liability is all it is entitled to. The receiver's authority to institute the proceedings and enforce payment is unquestioned, and a satisfaction of a judgment obtained in such proceedings would obliterate the obligation, regardless of the disposition made by the receiver of the proceeds of such assessment. *Scott v. Armstrong,* 146 U. S. 499; *Kennedy v. Gibson,* 8 Wall. (U. S.), 498; *Stanton v. Wilkeson,* 8 Ben. (U. S. D. C.), 357." (p. 501.)

In *Waldron v. Alling,* 73 N. Y. App. Div. 86, the New York supreme court had under consideration the question of the validity of a sale and transfer by a receiver of notes representing the liability of stockholders in a national bank. In the opinion the court used this language:

"When this step had been taken by the comptroller the liability of the stockholder assumed the same characteristics as any other claim or chose in action which the receiver might hold as part of the assets of the bank. Upon general principles such a claim would be assignable unless prohibited in some way by the statute. It is claimed by the respondent that such prohibition is to be found in section 5234, United States Revised Statutes, which provides, in connection with other clauses, that the receiver 'may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders.' It is argued that this statutory provision confers a personal trust and duty upon the receiver which may not be delegated by him. We think, however, that it would be a somewhat strained construction to give to the language employed this significance. The comptroller fixes the amount of the individual liability and makes it, as above stated, a liquidated claim. There is no particular personal trust

imposed upon the receiver in the matter of collecting the liability. It is made his duty to realize upon it the same as upon any other asset or claim of the bank which comes into his possession. One of the ordinary methods by which moneys are realized upon a claim is by the sale and assignment of the latter. The present case suggests the difficulties which would attend a decision that a receiver might not assign such a claim as this. The receiver of this particular bank is located in Washington. The defendant is found in this state. It would be so expensive as probably to render a proceeding fruitless if the former was compelled to personally come to this state to institute his action, while, upon the other hand, it might very well happen that something could be realized upon the claim by the sale and transfer thereof. So that we fail to find in the clause quoted a prohibition against the course taken in reference to this claim." (p. 88.)

It is true that if, after the notes were given, the assets of the bank had proved sufficient to meet all claims of creditors without resorting to the collection of these notes in full, or by realizing upon only a part thereof, there would have been a failure *pro tanto* of consideration for the notes; but it is not disputed that in order to pay the claims of the creditors it was necessary for the receiver to realize upon these notes in full. He did realize upon them by the sale to the plaintiff, which was authorized by the comptroller of the currency. The proceeds of the notes he applied in payment of claims of creditors of the bank, including a claim of George Hackney, who thus received his *pro rata* share of the proceeds of his own notes. How, then, can it avail the defendant that there is no statutory provision expressly authorizing the comptroller of the currency to direct a receiver to realize upon notes of this kind by a sale? The defendant is in no manner prejudiced in his defense. The notes were transferred after maturity with full notice of the facts, and no claim is made that the plaintiff occupies the position of an innocent purchaser. Any defense which the defendant might have urged against the original payee

was open to him in this action. Having suffered no prejudice, he can not complain of the transfer or question the plaintiff's right to maintain the action. (*Manley v. Park*, 68 Kan. 400, and *Greene v. McAuley*, 70 Kan. 601.) And if, for any or all the reasons suggested, the district court was without authority to direct the receiver to sell and transfer the notes to the plaintiff, that fact can furnish no ground of defense. No court would permit a second judgment to be obtained upon the notes or upon the liability in settlement of which they were given. The satisfaction of the judgment in favor of the plaintiff could be successfully pleaded in any court against a further claim made by anyone upon the notes or upon the stockholder's liability. It therefore becomes unnecessary to consider or determine the questions presented with respect to the jurisdiction of the district court to make the order directing the receiver to sell the notes.

The judgment is affirmed.