(No. 27922.—

MARTIN C. DECKER *et al.*, Appellants, *vs.* WILLIAM DOMONEY *et al.*, Appellees.

*Opinion filed September 19, 1944.*

BERNARD M. DECKER, of Waukegan, for appellants.

J. E. BAIRSTOW, of Waukegan, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Martin C. Decker, one of the appellants herein, was a creditor of Waukegan State Bank and sometime after the bank was closed by the Auditor, June 18, 1931, he started a representative action in the circuit court of Lake county to enforce the stockholders' constitutional liability. Later, the other appellants in this action were joined as plaintiffs. A receiver was appointed and other steps taken which are usual to such a proceeding. On May 27, 1933, and January 21, 1935, judgments were entered against all the stockholders within the jurisdiction of the court. The receiver proceeded with the collection of the judgments and by April 6, 1943, had collected something over a hundred thousand dollars and made distribution of it, less the costs, by paying it to the liquidating receiver. On April 6, 1943, appellants obtained leave of court and filed a petition setting forth the taking of the several judgments, the amount collected, and prayed that the receiver be ordered to sell the remaining uncollected judgments at public vendue and execute proper assignments of such judgments to the purchaser or purchasers. After notice, a hearing was had and on April 10, 1943, an order of sale was entered. More than thirty days after such order was entered, but before the sale was held, appellees, who were also creditors of

said bank, obtained leave of court and filed a motion to vacate the order of April 10, 1943. The grounds alleged in the motion were that the superadded liability imposed on stockholders of State banks by section 6 of article XI of the constitution belonged exclusively to the creditors of the bank and that it was not assignable. It was also alleged that section 11 of the Banking Act prescribed the procedure for the court to follow in such an action, and that it made no provision for the sale and assignment of uncollected judgments against stockholders. The conclusion drawn by reason of the several premises was that the circuit court had exceeded its jurisdiction in entering the order of sale and that such order was therefore void.

On September 20, 1943, a decree was entered which sustained appellees' motion and vacated the order of sale. The finding and conclusion of the chancellor are well stated in the following statement found in the decree: "that under Section 6 of Article XI of the Constitution of the State of Illinois, properly construed, a special type of liability is created and imposed upon stockholders of an Illinois bank, which liability constitutes property belonging exclusively to the creditors of such bank; that in view of the special nature of such liability, as created under the provisions of Section 6 of Article XI of the Illinois Constitution, the same is not assignable by the receiver appointed in a creditors' representative suit in equity to enforce such liability, nor does the Court in such a suit, have power or jurisdiction to decree the sale and assignment of judgments representing that constitutional liability; and that * * * decretal order of April 10, 1943, * * * is null and void for want of jurisdiction and contrary to the constitutional rights of the petitioners." This appeal is from such decree. Questions involving the construction of section 6 of article XI of the constitution, which have not been previously considered, are raised and authorize a direct appeal to this court.

The order of sale was entered more than thirty days prior to the filing of appellees' motion to vacate. It therefore had become final and was not subject to collateral attack except for jurisdictional deficiencies which rendered it void. The prayer of appellees' motion is based upon the lack of the jurisdiction of the court to direct the sale of the uncollected judgments. The issues thus restricted, we are not concerned with questions pertaining to what would be for the best interests of the creditors, whether the judgments were really uncollectible, or any other matters for or against the propriety of the sale.

Many cases have come to this court involving the construction and interpretation of section 6 of article XI of the constitution, so that the general character of the liability thus imposed has been pretty well defined. The liability is based upon a contract and a person who becomes a stockholder in a State bank assumes a primary liability to the creditors of the corporation to an amount equal to his stock. (*Burnett* v. *West Madison State Bank,* 375 Ill. 402.) Such liability does not accrue to the bank but to the creditors, and the creditors of the bank, either alone or by representative suit, are the only ones who can enforce the liability. (*Burket* v. *Reliance Bank and Trust Co.* 367 Ill. 196; *Golden* v. *Cervenka,* 278 Ill. 409.) It is a several and individual liability on the part of each stockholder to each creditor. (*Golden* v. *Cervenka,* 278 Ill. 409.) The liability of a stockholder is limited to those creditors whose claims were contracted during his ownership of the stock.

The liability is enforceable in a court of equity in a representative action (*Leonard* v. *Bye,* 361 Ill. 185,) and where the bank is being liquidated because of insolvency and a representative suit is pending, an individual creditor cannot maintain an action at law to enforce the liability. *Zimmerman* v. *Zeimer,* 363 Ill. 220.

From the cases referred to and others that might be added, it is well settled that courts of equity have jurisdic-

tion of such representative actions and that in determining the many questions that arise preliminary to and in fixing the liabilities of the several stockholders the court is in the exercise of its general equity jurisdiction. The power of an equity court to appoint a receiver in such a case and direct such receiver to collect the amounts found due from the shareholders was first pronounced in *Golden* v. *Cervenka*, 278 Ill. 409. The directions, as contained in the order of reversal in that case, were that the trial court enter a decree directing payments be made to the receiver appointed in such case. When the *Cervenka case* was decided there was no statute such as the provision now in section 11 of the Banking Act which directed the filing of a suit to enforce stockholders' constitutional liability in any particular court so that the holding in the *Cervenka case* supports appellants' position that the court's general equity powers extend to all the issues raised in determining the amount of the liability of each stockholder.

In 1929, section 11 of the Banking Act (Ill. Rev. Stat. 1943, chap. 16½, par. 11,) was amended and there was brought into the law the provision which it now contains. It directs that where any banking association has gone into liquidation the individual liability of the shareholders "may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself and all other creditors * *. * in any court having jurisdiction in equity." This enactment did not in any way abridge the general equity powers of the court. In *Elkins* v. *Diversey Trust and Savings Bank*, 363 Ill. 160, it was noted that the language of the statute was permissive and did not purport to prohibit those remedies which previously existed. The well-established rule was applied which is that where a statute gives a new remedy and contains no negative, express or implied, of the remedy which previously existed, the new remedy is to be regarded as cumulative and not exclusive and a

party may elect as between the two. Also, see *Eli Bates House* v. *Board of Appeals*, 358 Ill. 596, 599; *People ex rel. Olmsted* v. *Prather*, 322 Ill. 280, 284; *People ex rel. Williamson* v. *City of Toulon*, 300 Ill. 408.

Appellees' position seems to be that, although a court of equity may assume jurisdiction of a stockholders' liability action and exercise the general equitable powers of such a court in all the proceedings leading to fixing the amount due from each defendant stockholder and the entering of judgment, when such has been done its power to act ceases except to collect through the receiver and order distribution. At this juncture appellees' position becomes twofold, one, that the judgment that has been entered is of such a character that the court has no power to order the receiver to dispose of it and make an assignment, and secondly, that since neither section 11 of the Banking Act nor any other statute authorizes such court action, the judgments against the several stockholders may not be disposed of by order of sale.

It will be noted that the first contention goes to the nature of the judgment. It is argued that there is something inherent in the constitutional provision which imposes the liability which takes from a judgment entered under such a provision the characteristics of assignability that are incidents of the ordinary judgment entered by a court of equity when exercising its general equity powers. There is nothing in the constitutional provision, either express or implied, to sustain such theory. When a court of equity has, through the processes of equity procedure and the application of equitable principles, determined the amount due from each shareholder, the judgment entered carries the incidents that attach to the ordinary judgment entered by a court of equity. It is the duty of the receiver to collect it under the direction of the court and to hold the proceeds as assets for the benefit of the creditors of the bank. The entering of the judgment against the share-

holder merges his constitutional liability into a judgment and subjects it to collection by the receiver through the processes provided by law. The judgment becomes an asset of the creditors to be collected through the court's receiver. The proceeds collected are also assets and subject to distribution under direction of the court. The sole purpose of such a proceeding is to collect as much as possible from the shareholders for the benefit of the creditors and, if a court of equity finds that there is an uncollected judgment held as an asset which will produce more by sale than through the process of execution, we perceive no reason why the court, in the exercise of its general equitable powers, should not order the judgment sold.

Appellees, in their brief, express the fear that if the power to sell is sustained it will open the door to fraud upon the creditors and permit disposal of such judgments for less than what might be collected by execution. The opinions of courts of last resort of some other jurisdictions which support appellees' theory contain similar expressions but since the sale must be under the direction of the court and must be found to be for the best interests of the creditors of the bank, the creditors' rights are fully protected.

If appellees' contention that the liability imposed by the constitution makes the nature of the judgment such that a court is without power to sell, then the same inherent qualities that prevent a court from ordering a sale would also prohibit the court from approving a compromise of any judgment even though authorized by section 11 of the Banking Act. The statute would have to give way to the constitutional provision.

Appellees contend that a judgment taken against a stockholder of a State bank for the amount due on his constitutional liability can not be assigned unless authorized by statute. Since the conclusion has been reached that such a judgment is entered under the general equitable powers

of a court and that any part of the judgment which remains uncollected is an asset for the benefit of the creditors of the bank, it would follow that such a judgment, like all other judgments, is a chose in action and assignable by order of the court.

Appellees rely upon cases from other jurisdictions as follows: *Hood* v. *United Bank,* 211 N. C. 582, 191 S. E. 410; *State* v. *Kelly,* 141 Okla. 36, 284 Pac. 65; *American Exchange Bank* v. *Rowsey,* 144 Okla. 172, 289 Pac. 726; *Griffin* v. *Brewer,* 167 Okla. 654, 31 Pac. 2d 619; *Andrew* v. *State Bank of Swea,* 214 Iowa, 1339; 242 N. W. 62; *Roe* v. *King,* 217 Iowa, 213, 251 N. W. 81. We have examined each of these cases and find that some of them are distinguishable from the case at bar in that in those cases the question was raised as to the sale and assignability of the inchoate claim against the stockholders before they had been reduced to judgment. It is true that in some of them, particularly the Iowa cases, the claims had been reduced to judgment, but in view of the previous holdings of this court construing our constitutional provision, we can not adopt the conclusions reached in those cases.

The questions considered in this case have been presented in reference to the sale and assignment of judgments and nothing that is said herein should be construed as indicating what the holding would be if the question was as to the assignability of the claim against the stockholder before it had been reduced to judgment.

The decree is reversed and the cause remanded, with directions to proceed in accord with the views expressed.

*Reversed and remanded, with directions.*