WAGNER, for Use of MOLNER, v. SOUTH CHICAGO SAV. BANK.

No. 8561.

Circuit Court of Appeals, Seventh Circuit.

Dec. 16, 1944.

Rehearing Denied Feb. 13, 1945.

Elmer J. Schnackenberg, of Chicago, Ill., for appellant.

Maurice Weissman, of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

A national bank receiver sold and assigned to appellee a $10,860 judgment which he obtained against appellant, based on the statutory bank stockholder's liability. Appellant challenges the validity of such sale and assignment, contending that the statutory power of the receiver to *"enforce the personal liability of the shareholders"*[1] does not include the power to *sell* and *assign,* this claim. Appellee, the assignee, purchased the bank's assets (including stockholders' liability judgments) in the receiver's hands for $1,230. He instituted the instant garnishment proceedings against sixteen shares of bank stock of the par value of $1,000, the property of appellant, which stock was in the hands of the garnishee, South Chicago Bank, as statutory security of Wagner's fidelity as director of that bank. The bank and appellant were both named defendants.

Heretofore[2] we held this claim was not exempt from garnishment simply because of the character of its deposit, and also held it was error to discharge the garnishee on that ground. Upon that appeal counsel for the stockholder did not question the authority of the receiver to sell the judgment, or the validity of such sale. The case was returned to the trial court "for further proceedings in accord with the views here expressed." Upon the return of the case to the trial court, Wagner filed a petition, the gist of which denied liability because of the invalidity of said assignment.

The court "ordered leave be given to * * * file the petition" of Wagner. Later, after due consideration it struck said petition from the record. Later the court entered judgment in favor of appellee, the assignee. Wagner appeals from that judgment.

The pertinent statutes provide (Title 12 U.S.C.A.):

Secs. 63 and 64. "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof * * *." (1913).

Sec. 65. "When any national banking association shall have gone into liquidation * * * the individual liability of the shareholders * * * may be enforced by any creditor of such association, by bill in equity * * *." (1876).

Sec. 67 (enacted Feb. 25, 1930). "Any receiver of a national banking association is authorized, with the approval of the Comptroller of the Currency and upon the order of a court of record of competent jurisdiction, to *compromise,* either before or after judgment, the individual liability of any shareholder of such association." (1930).

Sec. 191. "Whenever any national banking association shall be dissolved * * * or whenever the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs, * * * appoint a receiver who shall proceed to close up such association, and enforce the personal liability of the shareholders, as provided in section 192." (1876).

Sec. 192. "On becoming satisfied * * * that any association * * * is in default, the Comptroller of the Currency may forthwith appoint a receiver, and require of him such bond * * *. Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; *and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders."* (1916, amended 1935).

In the instant case the receiver's judgment for $10,860 against appellant was obtained, December 22, 1936. Execution was issued on the judgment and returned "no property found." On January 14, 1942, the

[1] 12 U.S.C.A. § 191.

[2] Molner v. South Chicago Sav. Bank, 7 Cir., 138 F.2d 201, 148 A.L.R. 1159.

District Court, in an equity proceeding, entered an order authorizing the receiver to "sell, transfer and assign to * * * (Molner, the assignee, appellee here) for the sum of $1,230 in cash, all of the assets of the receivership estate and salable stock assessment liabilities particularly described and set forth in an exhibit attached to said order" one of which items in the exhibit was the judgment here involved.

It is appellant's contention that a national bank stockholder's liability is unique—not an asset of the bank, but a right accruable to a creditor to enforce, or the receiver to enforce upon authorization of the Comptroller, and, once enforced, the proceeds constitute a trust fund for the benefit of the creditors, and the surplus belongs to the stockholder or stockholders. He denies authority of the receiver to assign such liability or a judgment based thereon. He points out that although a receiver had previously had the power to compound "all bad or doubtful debts" such power did not include the power to compromise stockholder liability debts, and it was necessary in 1930 to secure a specific statutory authorization permitting the receiver to "compromise" stockholder's statutory liability. The power of the receiver "to enforce the individual liability of the stockholders" must be narrowly construed, so he argues, and so construed, excludes the power to assign.

No Federal case directly in point has been cited, construing the right of a national bank receiver to assign a stockholder's liability, either before or after judgment. There have been several state court cases on the subject, some of them involving national banks.[3]

Appellee also challenges the appellant's right to assail the validity of the assignment in this allegedly collateral proceeding. Answering this puzzler, appellant contends that the order directing the assignment was in reality an administrative proceeding and so this is an original attack, and not collateral, upon the validity of the assignment.

The law of the case is also advanced, based on our opinion in the prior appeal, where we held that the garnisheed stock in the hands of the defendant bank was property subject to garnishment in an action brought by the assignee of the judgment in favor of the receiver.

*Assignability of Stockholder's Liability by Receiver.* Coming at once to the meat of this controversy, the assignability by a receiver of national bank stockholder's liability, we find much contrariety of opinion. As stated in American Jurisprudence, "Banks," § 137:

"On the one hand, there is authority to the effect that the right of the receiver of an insolvent banking corporation to enforce an assessment under a statute providing that stockholders shall be liable to creditors to an amount equal to their respective shares is not an asset of the bank, and therefore can be enforced by the receiver's transferee of such right only to the extent to which the consideration paid by him can be shown to have been distributed to creditors. There is, however, authority to the contrary effect—that is, that the claim of the receiver against stockholders of the insolvent bank is one that he can assign or transfer."

In 82 A.L.R. 1285, 1286, it is said:

"Upon the question whether the statutory superadded liability of a shareholder in an insolvent corporation may be assigned or sold by its receiver, the cases are about evenly divided."

Vol. 9, C.J.S., Banks and Banking, § 604, p. 1143, aligns itself on the side of the salability of such a claim basing its conclusion on the New York case of Waldron v. Alling, 73 App.Div. 86, 76 N.Y.S. 250. Iowa seems to have furnished the leading decisions supporting the appellant's position. Roe v. King, 217 Iowa 213, 251 N.W. 81; Andrew v. Bank of Swea City, 214 Iowa 1339, 242 N.W. 62, 82 A.L.R. 1280. This lead has been followed by other respectable authorities.

The Illinois Supreme Court, in the recent

---

[3] Opposed to assignment: Andrew v. State Bank, 214 Iowa 1339, 242 N.W. 62, 82 A.L.R. 1280 (citing other Iowa cases); American Exchange Bank v. Rowsey, 144 Okl. 172, 289 P. 726; Griffin v. Brewer, 167 Okl. 654, 31 P.2d 619; Hood v. Richardson Realty, 211 N.C. 582, 191 S.E. 410, 414; Lally v. Anderson, 194 Wash. 536, 78 P.2d 603; Shaw v. Strong, Tex. Civ.App., 35 S.W.2d 769; State v. Kelly, 141 Okl. 36, 284 P. 65.

Permitting assignment: Comstock v. Morgan Park Trust Co., 319 Ill.App. 253, 48 N.E.2d 980; Waldron v. Alling, 73 App.Div. 86, 76 N.Y.S. 250; Schaberg's Estate v. McDonald, 60 Neb. 493, 83 N. W. 737; White v. Taylor, 187 Ark. 1, 58 S.W.2d 210; Cobe v. Hackney, 83 Kan. 306, 111 P. 458; Decker v. Domoney, 387 Ill. 524, 56 N.E.2d 750.

case of Decker v. Domoney, 1944, 387 Ill. 524, 56 N.E.2d 750, squarely held that in the case of a state bank (Illinois), judgments based on stockholder's statutory liability, could be validly assigned. It is worthy of note that here the court stresses the fact that the liability has been reduced to judgment, and a judgment is less vulnerable to the attack which appellant makes, than was the naked liability before judgment.

In our search we have found but one Federal case, Fisher v. Lefferts, 3 Cir., 105 F. 711, decided in 1901. We quote from that opinion:

"This case arises upon the following facts: In May, 1891, B. F. Fisher, the legal plaintiff in this suit, was appointed receiver of the Spring Garden National Bank, and entered upon the duties of his appointment. Not long afterwards an assessment was made by the comptroller of the currency to enforce the additional liability of the shareholders under the act of congress, and this suit was brought to recover the assessment due from the defendant. A judgment was recovered in June, 1892, for the full amount of the claim, but * * * it was never paid. In April, 1899 * * * the court thereupon entered a decree giving the power to sell. Sale was accordingly made, this judgment being included, and the receiver's return was duly confirmed by the court. * * * not long afterwards * * * plaintiff issued execution and levied upon the defendant's property. * * *

"There are two reasons why this rule must be discharged. In the first place, in its present form, the petition is a collateral attack upon the decree ordering the sale, and therefore cannot be entertained. * * *

"But, even if the petition were before the court in the proper proceeding, I should dismiss it because, in my opinion, the petitioner has no standing to raise the question whether or not the sale was good. * * *"

We are convinced that the question will remain a debatable one until the Supreme Court settles it.

■ Our conclusion favors the salability of such a judgment. Were it not for the number of respectable and respected state courts which have reached a contrary conclusion, we would be tolerably free from doubt.

The language of the statute must be read in the light of its purposes. Here, the receiver of an insolvent national bank held a claim against the appellant and other stockholders, the validity of which was and is not questioned. To meet the obligations to depositors, it became the receiver's duty to liquidate the assets of the insolvent national bank. Among the assets were the assessments against the stockholders. Treating all the stockholders alike was the plain duty of the said receiver. Some stockholders paid their assessments in full and promptly. Appellant was not one of them. Receiver sued him and obtained a money judgment against him for the amount of his assessment. Still he refused to pay his obligation. An execution was issued and returned wholly unsatisfied. What next could or should the receiver do? Appellant answers, nothing. But, what of the depositors, for whose benefit the statute was enacted?

■ Ordinarily in an equity receivership proceeding a sale of assets, under authority and with the approval of the court, would follow. Why not here? In all such suits the proceedings are for the benefit of the creditors who are here the depositors. The protection of their rights is the court's concern. If appellant's argument were to prevail, the liquidation of the bank's assets would be prolonged,—perhaps beyond the life of the youngest depositor. It would await the wishes of the judgment debtor. The more patient the receiver, the more reconciled would the debtor stockholder become to the status quo.

Let us take a supposititious case. Let us assume the receiver obtained as part of its execution, the stockholder's interest in some oil and other minerals underlying lands in southern Illinois. There may or may not be minerals of value involved. No efforts are being made to develop the property at the time. Must the receiver sit by indefinitely, or at least beyond his lifetime, or may he not sell the interest he thus acquired on an execution sale? And the legal rights would not be different if the stockholder gave the receiver a lien on the mineral deposits, as security for stockholder's liability above mentioned instead of the receiver's acquiring it on execution.

■ Appellant argues that because Congress by amendment (Sec. 67) gave the receiver authority to *compromise* claims, it is clear that the powers of the receiver should be strictly construed. This conclusion is far from evident. Whether it was necessary to amend a statute so that a receiver

possess authority to compound and compromise claims, presents a doubtful legal question. At any rate, counsel could argue its doubtfulness and thus thwart or delay liquidation of the bank. But, as amended, there would no longer be doubt.

The amendment may well have been passed to make clear and certain the authority of bank receivers to compromise. Congress enacted the amendment in 1930, at a time when bank failures were many, and when stockholders knew not where they stood. Their financial embarrassment was similar to that of the banks of which they were, unfortunately, unhappily connected as a stockholder. In the light of the history of our times, it may be argued with greater plausibility, we think, that a desire to help insolvent national banks liquidate and also make it easier for embarrassed stockholders, who desired, to the extent of their liability, to meet bank stockholders' liability, is the proper explanation of this amendment. It was to clarify and to avoid delays incident to prolonged and expensive litigation that the statute was amended.

The verb, which in the absence of the amendment defined the authority of the receiver was "enforce." The receiver was authorized to *"enforce"* the liability of the stockholder (Sec. 192). How is a claim usually "enforced" against a creditor? By demand, suit, and execution. If not successful, what next? The answer is, Sell the claim. And why should the receiver, possessing all other enforcement powers, not have the right to sell the claim, under an order of the court and upon an order of approval of the sale by the court?

It is argued that we should not assume Congress intended to give to receivers authority to sell claims of this kind when the only purchasers are "scalpers" and "speculators" who would never pay substantial sums for such claims. This presupposes that the receiver and also the court would sacrifice the estate and betray the obligations of their trusts. Moreover, the stockholder could have offered more than the price bid and thus have defeated the sale. He would have the benefit of the legislation which authorized composition.

Of course, it need hardly be observed that we do not favor sales of claims to those who, like vultures, hang about courts of bankruptcy and feed themselves fat on forced sales of assets of bankrupt estates. Nor do the District Courts, whose duty it is to watch over all sales and authorize and approve only sales that merit approval. But appellant, refusing to meet his obligation as a stockholder of an insolvent bank, or any part of it, is not in the best position to attack the sale because it allegedly failed to bring as much as it should.

The decree is affirmed.

MAJOR, Circuit Judge (dissenting).

The opinion suggests that the authorities favoring and opposing the authority to assign stock liability are about evenly divided. (I shall hereinafter point out that such is not the case.) Assuming, however, that the authorities are as the opinion indicates, we are free, so I would think, to decide the case in accordance with our sense of fairness and justice. In doing so, it is hardly necessary to apply any harsh names to either of the parties. There is nothing in the record to indicate but that they are both honest men, Molner attempting to make some easy money at the expense of Wagner, and the latter defending himself against such attempt.

Assuming for the moment that the question involved is an open one, it is pertinent to note the process by which these parties occupy their respective positions. Wagner purchased stock in the bank and invested his money in its assets. As all stockholders, the law imposed upon him an additional liability for the benefit of the bank creditors, contingent upon the assets of the bank being insufficient to satisfy such creditors. He received not one penny for this obligation which was imposed upon him by law. As a result, upon the bank's liquidation he became liable to the creditors for this statutory liability. On the other hand, Molner acquired the instant judgment for perhaps a trifling sum (the record does not disclose the amount or value of the assets assigned to him). Now he seeks to recover not for reimbursement of money expended by him, nor for services rendered, nor because of any contractual obligation with Wagner, but upon an obligation which was imposed solely for the benefit of creditors and for which Wagner received no benefit.

The legal question is whether the receiver was authorized to sell and assign the judgment now sought to be enforced. Unless the receiver was so authorized, Molner acquired no property right in the judgment. An examination of the provisions of the National Banking Act makes it plain, so I think, that such authority was intentionally

withheld by Congress. Sec. 191 of the Act of 1876 authorizes the receiver to "enforce the personal liability of the shareholders, as provided in section 192." Sec. 192 authorizes the receiver to "sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property * * *; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders." Sec. 67, enacted in 1930, enlarged the authority of the receiver "to compromise, either before or after judgment, the individual liability of any shareholder of such association." Sec. 197 provides for the winding up of a receivership and the distribution of assets. It authorizes the receiver to "* * * sell, dispose of, or otherwise collect the assets * * *." This section also provides for the election of an agent upon a majority vote of the stockholders to whom the receiver shall "* * * transfer and deliver to such agent all the undivided ·or uncollected or other assets." Further, this section provides that such agent may "* * * dispose of the assets and property of such association * * *." And to finally settle the estate, he is authorized to "* * * sell, compromise, or compound the debts due to such association * * *."

It is highly significant that in all these various sections which must be considered together, the receiver is given express authority to sell and dispose of the bank's assets, but in no instance is he given authority to sell stock liability. Especially is this so as to Sec. 197, which provides for the winding up of a receivership. The authority to sell and transfer is granted both to the receiver and to the stockholder's agent (when an agent is selected), but such authority is expressly limited to the assets of the bank. I am unable to reconcile the failure of Congress to confer such authority on any theory other than that it was deliberately withheld, and this because of the peculiar and limited nature of the liability and the particular purpose for which it was created. When Congress in 1930 enacted Sec. 67, it enlarged the authority of the receiver "to compromise, either before or after judgment," but again it did not include the authority to sell. Congress evidently thought that the authority "to enforce" did not cover the authority "to compromise." To think otherwise is to attribute to Congress the enactment of an idle and useless provision. It is evident that if the receiver, prior to the 1930 enactment, was without authority to compromise, he was likewise without authority to sell. The opinion avoids this reasoning by suggesting that Sec. 67 might have been for the purpose of removing doubt. If such was the case, why did not Congress at the same time remove the doubt as to the authority of the receiver to sell? Why enlarge the authority of the receiver "to compromise" and not at the same time enlarge his authority "to sell"? The logical answer is that Congress did not intend that the receiver have such authority.

The opinion states: "To meet the obligations to depositors, it became the receiver's duty to liquidate the assets of the insolvent national bank. Among the assets were the assessments against the stockholders." This contention is urged upon us by Molner. Herein lies the main fallacy of the opinion, that is, the inclusion of stock liability as an asset of the bank. It is also the premise upon which some of the authorities are predicated. That this premise has been completely repudiated, there can be no doubt. Dunn v. O'Connor, 67 App.D.C. 76, 89 F.2d 820, 826; Greaney v. Deitrick, 1 Cir., 103 F.2d 83, 88; Robbins v. Mitchell, 9 Cir., 107 F.2d 56, 57; Nieman v. Bethlehem Nat. Bank, 3 Cir., 113 F.2d 717, 718; Frank v. Giesy, 9 Cir., 117 F.2d 122, 126. These cases not only hold that the liability is not an asset of the bank but point out the special nature and purpose for which the liability was created. As was said in Dunn v. O'Connor, supra, 89 F.2d at page 826: "* * * it has never been questioned, and, of course, cannot be questioned, that the above-quoted provision (Sec. 192) authorizing the Comptroller to enforce stockholder liability vests that power exclusively in that official and makes this liability a trust fund for creditors." And, as stated in Frank v. Giesy, supra, 117 F.2d at page 126: "The present suit is not a proceeding against the bank's assets, for the superadded liability of the shareholders is not an asset of the bank, Robbins v. Mitchell, · 9 Cir., 107 F.2d 56, but is in the nature of a fund to which creditors may resort when the assets of the bank are insufficient to meet their claims."

At this point, it is pertinent to note that the order (no doubt prepared by or under the direction of the Comptroller) purporting to authorize the sale of the Wagner judgment did not include it as an asset of the bank. It provided for the sale of "all

of the assets of the receivership estate and *salcable* stock assessment liabilities." Thus it recognized that stock liabilities were not assets of the bank. The language also raises the question as to why the stock assessment liabilities to be transferred were qualified by the word "saleable." It is a reasonable inference that the Comptroller (or whoever prepared the order) recognized the doubtfulness of the receiver's authority to sell and transfer stock liability; hence, it was sold to Molner with a warning of such doubt. In other words, Molner took the stock liabilities at his own risk and not upon any representation from which good title could be claimed.

As indicated in the opinion, the instant question has not been decided by a federal court. It involves the construction of a federal statute and, of course, we are not bound by state court decisions. Their importance is dependent upon their reasoning. A study of the six cases cited in the opinion, which are supposed to stand for the authority of the receiver to sell stock liability, shows that they are not as potent as their number would indicate. I shall consider them in the order of their citation (see footnote to the opinion). Comstock v. Morgan Park Trust Co. is an appellate court decision of Illinois which is not reported in full. The abstract of the decision does not mention the instant question but discloses that the case was decided on another issue. However, the opinion which has been furnished us expresses the view that the sale of such a judgment was valid. This statement was made by the court, apparently as an afterthought, without giving any reason or basis therefor. As an authority for the question before us, it is nil. Waldron v. Alling is a decision by an intermediate court of the state of New York. True, the court construed the National Banking Act and held that stock liability was assignable. This is supposed to be the leading case and has been cited by two or three other courts and in textbooks. The opinion, however, was predicated on the erroneous theory that such liability was an asset of the bank. As was said by the Supreme Court of Oklahoma in State v. Kelly, 141 Okl. 36, 284 P. 65, 67: "The case of Waldron v. Alling, 73 App.Div. 86, 76 N.Y. S. 250, holds to the contrary, and in effect that such stockholders' liability is an asset of the bank, assignable as are other assets. That case stands alone against the almost unbroken current of authority. Its origin is not from the court of last resort in that state."

As heretofore shown, the fallacy of the premise upon which the Waldron case rests has been so thoroughly demolished that the decision is without force. In Schaberg's Estate v. McDonald, the main question was whether a suit could be maintained by the receiver after the stock liability had been transferred to a third party. The court held it could. What was said concerning the authority of the receiver to sell was incidental to the main question, and apparently upon the theory that such liability was an asset of the bank. White v. Taylor is by the Supreme Court of Arkansas and holds that the stock liability under the laws of that state is assignable. However, the court follows the Waldron case and bases its decision squarely on the proposition that such liability was an asset of the bank. Cobe v. Hackney is by the Supreme Court of Kansas, where the court construed the National Banking Act. While the court does not cite the Waldron case, it quotes Sec. 192 and bases its decision on the express authority of the receiver to sell the assets of the bank.

It is, therefore, my view that none of these cases furnish any support for the opinion. There is a case, however, which does, and that is the recent decision of the Illinois Supreme Court in Decker v. Domoney, 387 Ill. 524, 56 N.E.2d 750. The court, in construing a provision of the Illinois Constitution and a statutory provision, held that a judgment obtained by the receiver upon stock liability was assignable. I would doubt that the same court would place a like construction upon the provisions of the National Banking Act, 12 U.S. C.A. § 21 et seq. But assuming that it would, its position would be an awkward one in view of the holdings of other courts.

The courts of Iowa, Oklahoma, Washington, North Carolina and Texas have decided to the contrary. The Supreme Court of Oklahoma in State v. Kelly, supra, in holding that the liability was not assignable, on page 69 of 284 P. stated: "The bank commissioner's right and duty was simply to enforce the liability by collection when and where necessary to pay creditors or depositors. The right could not be farmed out to private individuals, and it ought not to require argument to make it clear that, where there is no right or power of assignment, there can arise no right of subrogation."

This holding was reaffirmed by the same court in the later case of Griffin v. Brewer, 167 Okl. 654, 31 P.2d 619. In my judgment, the best reasoned opinions on this subject come from the Supreme Court of Iowa. In Andrew v. State Bank, 214 Iowa 1339, 242 N.W. 62, 82 A.L.R. 1280, the receiver sold the assets of a state bank, including a $500 liability against one Larson. After pointing out that notes payable to the bank were properly assignable, the court (at page 65 of 242 N.W.) stated: "Such obligations of the makers of notes are of an entirely different character from the statutory superadded liability of a stockholder. Such liability can only be enforced for the purpose of payment to creditors. If the assignee paid nothing for this assignment, the creditors received nothing. If the assignee paid $50 for the claim against Larson, then the creditors received only $50, and the balance of $450 cannot be collected against Larson because it would be collecting this statutory superadded liability for a purpose other than the payment of creditors. * * * Such liability cannot be hawked at auction and sold to speculators for their individual aggrandizement, with little or no benefits flowing to the stockholders. To do so would be to plainly circumvent the manifest purpose of the statute." The court held that the stock liability was not an asset and could not be assigned by the receiver.

The same court, in the later case of Roe v. King, ·217 Iowa 213, 251 N.W. 81, reached the same result where the stock liability had been reduced to judgment and the latter assigned by the receiver. The court (at page 82 of 251 N.W.) stated: "When the superintendent of banking in the case at bar, as receiver, obtained judgment against the appellee, he received thereby only a means of enforcing the claim for the bank assessment. Nothing was added to the receiver's right of assignment when he obtained the judgment. The judgment was only a final declaration in favor of the receiver, as an officer of the court, that the appellee was subject to the assessment. According to the judgment, it is a part of the stock assessment."

The Supreme Court of the state of Washington, in Lally v. Anderson, 194 Wash. 536, 78 P.2d 603, held that a receiver was without authority to sell a judgment taken upon a note given in payment of stock liability. After discussing the various sections of the National Banking Act, the court (78 P.2d at page 605) stated: "The superadded liability of the stockholder not being an asset of the corporation, the question arises whether the nature of that obligation was changed by reason of Anderson's having given his promissory note which was reduced to judgment. While the court will not go behind a judgment for the purpose of examining into the validity of the claim upon which it is based, the court is not precluded from ascertaining whether the claim was one of such a nature that the court is authorized to enforce it. When justice requires it, the judgment will generally be construed, not as a new debt, but as an old debt in a new form."

The court cites a number of cases, including State of Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239, in support of the proposition that the nature of a stockholder's liability is not changed by the fact that it is reduced to judgment. While the Supreme Court of Wisconsin has not decided the instant question, so far as I can ascertain, it is interesting to note that the Attorney General of that state has rendered an official opinion (cf. footnote, Wisconsin Statutes 1943, page 2497), in which he expresses the view that stockholders' statutory liability is not assignable or saleable, but in any event it is enforceable by the purchaser or assignee only to the extent of the actual purchase price.

It would serve no good purpose to quote further from these state court decisions. As stated, however, the Supreme Courts of North Carolina (Hood v. Richardson Realty, 211 N.C. 582, 191 S.E. 410) and Texas (Shaw v. Strong, Tex.Civ.App. 35 S.W.2d 769) have reached the same result as those of Iowa, Oklahoma and Washington.

This case, as stated in the beginning and as admitted by the opinion, could on authority be decided either way, although, as I have endeavored to show, a great majority of the courts have held against the authority of the receiver to sell stock liability. Under these circumstances, I am unable to think that this court should lend its assistance to Molner in his speculative pursuit of some easy money. Justice in my opinion requires a contrary holding. I would reverse the judgment.