In re JOSLYN and four other titles.

Nos. 10520, 10537, 10539.

United States Court of Appeals
Seventh Circuit.

July 2, 1952.

As Corrected on Denial of Rehearing
Sept. 29, 1952.

Horace A. Young, John S. Miller, Thomas Hart Fisher, Norman Crawford, Chicago, Ill., for appellants.

Karl Edwin Seyfarth, Benton Atwood, Edward J. Metzdorf, John E. Owens, Vincent G. Rinn, Samuel W. Miller, Alvin G. Hubbard, Chicago, Ill., Hubbard, Hubbard & Dorgan, Chicago, Ill., of counsel, for appellees.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

This is the fifth appeal or series of appeals in the bankruptcy proceeding of Joslyn since that proceeding was reopened in 1946, ten years after his discharge in 1936.

The present appeals are from orders by which the District Court sought to terminate the seemingly endless litigation which developed after the District Court reopened the proceeding on grounds of fraudulent concealment of assets. The assets alleged to have been concealed consisted of the bankrupt's interest in the income of two trust estates established by his parents for himself and other members of his family prior to his voluntary petition in bankruptcy and not scheduled therein by him— assets which, under Illinois law, probably are not subject to execution but which this court has since held are administrable in bankruptcy. The creditor upon whose petition the proceeding was reopened, hereafter referred to as the Elks, based its claim against the bankrupt upon the latter's stockholder's superadded liability for the debts of an insolvent bank, a claim also asserted by Hillmer and others as plaintiffs in a representative suit then and still pending in the Superior Court of Cook County, Illinois, intended to recover the amounts due under the Illinois law from all stockholders in a bank incorporated under Illinois law, including this bankrupt, and brought in behalf of all creditors, including the Elks.

The final decree and other orders from which the present appeals stem allowed a motion by the bankrupt to strike a motion by the Elks for reassignment of the case for prejudice, denied a motion by the trustee in bankruptcy for leave to file a petition for certificate of civil and criminal con-

tempt and his petition for injunctive relief, approved the well-considered report of the referee in bankruptcy, vacated restraining orders theretofore entered against the trustees of the family trusts except as they were directed to withhold a fund of $50,000 for possible further fees, costs and expenses, vacated orders restraining all persons from prosecuting suits against the bankrupt, denied without prejudice a petition for leave to intervene filed by a group of other stockholders, dismissed a counterclaim filed by the trustee in bankruptcy against those would-be intervenors, allowed fees and costs in the proceedings, directed the trustee in bankruptcy to dismiss certain plenary suits against the family trustees and others, and reserved jurisdiction to adjudicate any remaining claims against the bankrupt for fees, costs and expenses.

The facts of the various aspects of this unduly protracted proceeding have been fully stated in four opinions in the earlier appeals. See In re Joslyn, 7 Cir., 168 F.2d 803, 171 F.2d 159, 179 F.2d 70 and 361. They are also succinctly stated in the opinion of the Illinois Appellate Court in a matter which that court considered to be inseparably connected with the bankruptcy proceeding. See Joslyn v. Joslyn, 337 Ill. App. 443, 449, 457, 86 N.E.2d 367, appeal denied, 341 Ill.App. xiv. We deem it unnecessary to restate the background facts of the litigation again. As we view these appeals, the only serious question is whether the District Court abused its discretion in, in effect, approving the final settlement of the bankrupt's stockholder's liability in the state court and terminating the bankruptcy proceeding on the basis of that settlement.

The controversy on the present appeals presents the unusual situation of an adjudicated bankrupt, now fully solvent, having assets far more than enough to pay any claims which might be determined against him in this proceeding, who asked the bankruptcy court to fix those claims and authorized his representatives to pay them in full as fixed by the court, but was resisted on that application by the trustee in bankruptcy. That officer of the court insists upon his right to have all the assets of the bankrupt turned over to him to handle and distribute. While the matter was still pending in the bankruptcy court the father of the bankrupt filed a petition in the state court in the representative suit to which the bankrupt was a party defendant, asking leave to pay the principal amount in full to the receiver upon entry of judgment for that full amount against his son. This was done after informal consultation between the state court judge and the bankruptcy judge who found no objections to this practical solution of the litigation.

We are in entire accord with the District Court's final disposition of this protracted proceeding as explained in his excellent opinion reported in 102 F.Supp. 521. We agree that the receiver appointed in the state court representative suit was the proper claimant to receive the moneys here involved. That suit was brought in behalf of all creditors, including the Elks who have participated in distributions of moneys collected thereby to date, in accordance with the provisions of the state law. See Hillmer v. Chicago Bank of Commerce, 375 Ill. 266, 31 N.E.2d 309. According to the Illinois decisions, a class action in equity is the proper mode of enforcing this superadded liability, and when a bank is being liquidated because of insolvency, and a representative action is pending, an individual creditor cannot maintain an action at law to enforce the liability. Decker v. Domoney, 387 Ill. 524, 56 N.E.2d 750; Zimmerman v. Zeimer, 363 Ill. 220, 1 N.E.2d 854; Babka Plastering Co. v. City State Bank, 264 Ill.App. 142. See also 3 Zollmann, Banks and Banking, §§ 1842, 1823. We think these authorities fully support the District Court's disposition of the claim, in effect approving its settlement in the state court where judgment was entered for the full principal amount of the bankrupt's stockholder's liability and satisfied by payment of that amount in his behalf to the receiver.

Appellants contend that our ruling in 171 F.2d 159, 167, that "the Elks has a provable claim in the bankruptcy proceeding" is in conflict with this ruling. They assert that it follows from our earlier decision that some 12,000 creditors of the bankrupt who

have participated in the state representative suit, as well as some 15,000 others who have not participated therein for reasons not disclosed on this record, are entitled to have this bankruptcy proceeding held open for the possible filing now of claims by any or all of these participating or non-participating creditors, all of which claims accrued between April 5, 1930, when the bank commenced business, and June 25, 1932, when it was closed by order of the Auditor of Public Accounts. As the trustee put it in his petition for injunctive relief, "said 15,000 (or more) creditors * * * are each individually potential creditors in bankruptcy having the right to file provable claims in this bankruptcy proceeding, and the right to receive their respective distributive shares of the administrable assets of the bankruptcy estate herein during the usual course of administration" pursuant to the mandate of this court.

It is to be remembered that when we made the ruling now relied upon by appellants we were considering an appeal from the dismissal of the entire reopened proceeding on the ground that the Elks was not a creditor of the bankruptcy estate, and we considered the Illinois decisions cited above in the light of that ruling without seriously considering the right of the representative who had also asserted his claim in the reopened proceedings to prosecute it there. Although we had referred to the fact that the status of the Elks in the matter was immaterial since the trial judge could have reopened the bankruptcy proceedings *sua sponte* when his attention was called to the fact that it appeared that the bankrupt had fraudulently concealed assets, we nevertheless ruled that their claim was provable. In this situation we thought that the case, Brown v. O'Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827, was authority for the proposition that the claim was provable in bankruptcy even though the stockholder had been adjudicated a bankrupt and discharged prior to liquidation of the liability and fixing of the amount thereof in the state court proceeding. But we must note now, with reference to the relative status of the representative and the individual creditors, that the claimant in the Brown case was the receiver duly appointed pursuant to the National Banking Act, a status which appears to us to be comparable to that of the receiver appointed in the course of a creditor's representative suit to enforce stockholders' liability under the Illinois law. We think Judge Igoe properly recognized this in his disposition of the cause in accordance with the judgment of the state court which had jurisdiction over the class suit. We find no violation of his discretionary powers in the action taken.

The various parties seek to raise many issues on these appeals—the court's disposition of the affidavit of prejudice and of the petition for certificate of contempt, new claims filed against the bankrupt by "non-participating creditors" in the state court proceedings, the so-called ousting of the bankruptcy court's paramount jurisdiction by its final decree, and others. We have considered all of these issues and find them without merit, and we are convinced that no good purpose would be served by stating the facts or discussing the law pertaining to any of them.

Judgment affirmed for reasons stated by the District Court in his opinion.